A05A2135. THOMAS v. THE STATE.
(622 SE2d 421)

ELLINGTON, Judge.

A Chatham County State Court judge found Kirk Frederick Thomas guilty of two counts of stalking, OCGA § 16-5-90, and one count of disorderly conduct (opprobrious words), OCGA § 16-11-39 (a) (3). Thomas appeals from the denial of his motion for new trial, raising the general grounds and contending the court should have merged his stalking convictions. Finding no error, we affirm.

Upon a finding of guilt following a bench trial, the presumption of innocence no longer applies, and on appeal, the appellate court construes the evidence in favor of the judge's findings of fact. The appellate court does not weigh the evidence or determine witness credibility but merely determines the sufficiency of the evidence. *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979); *Wilcoxson v. State*, 227 Ga. App. 25 (1) (488 SE2d 104) (1997). So viewed, the record reveals the following relevant evidence.

Thomas and the victim had a troubled romantic relationship that lasted, roughly, from 1996 to 2000. In July 1999, a peace bond prohibited contact between Thomas and the victim, although both violated its terms. The victim testified that Thomas was verbally and physically abusive to her during the relationship and, after the relationship finally ended, he made frequent phone calls to her home and followed her "everywhere, all over town." The victim even lost a job because of Thomas' behavior. When the victim married a police officer in October 2000, Thomas "backed off a little bit."

Around 11:30 p.m. on April 13, 2001, the victim saw Thomas as she was leaving her place of employment, a hospital. Thomas was sitting in his pickup truck, parked next to the victim's car in a dark, near-empty parking lot. Frightened, the victim had a security guard

escort her back inside the hospital. Thomas drove away. Fearful that she was being followed, the victim drove home by a different route. Shortly after midnight, Thomas parked in front of the victim's home. Thomas admitted he thought the husband was away because his patrol car was not there. While the victim called 911, her husband walked outside to tell Thomas to leave. The husband testified that Thomas was angry, loud, and upset. Thomas walked up the steps toward the house shouting profanities, telling the victim's husband to get out of his "f'ing way," that he only wanted to "talk to the bitch." Thomas eventually retreated to his truck, where he told the victim's husband: "I'm going to kill you both."

Thomas told an investigating officer that he went by the hospital and the victim's home because he was looking for closure. Thomas testified that although he believed the victim and her husband were moving away, he thought the victim was a threat to him, that she had a rifle, and that she had been tampering with his truck. He told the court that he went by her work and home that night "to verify that they [had] gone . . . to put an end to the conditions that they had."

1. This evidence was sufficient to find Thomas guilty beyond a reasonable doubt of two counts of stalking.[1] Thomas admitted he went to the victim's place of work and then, a short while later, to her home. The victim did not consent to either visit and was frightened by both. Although Thomas denied following and contacting the victim for the purpose of harassing or intimidating[2] her, his intent may be inferred. *Hooper v. State*, 223 Ga. App. 515, 516-517 (2) (478 SE2d 606) (1996). Evidence of that intent includes Thomas' prior physical abuse of the victim, the circumstances surrounding both acts (the late hour, contact when the victim was likely to be alone), and the threat to kill made to the victim's husband. See *Johnson v. State*, 260 Ga. App. 413, 414-417 (1) (579 SE2d 809) (2003) (history of violence toward victim as evidence of intent to harass or intimidate). Further, the stalking convictions do not merge because they are based upon

---

[1] "A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." OCGA § 16-5-90 (a) (1).

[2] OCGA § 16-5-90 (a) (1) provides that,

[f]or the purposes of this article, the term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

factually distinct acts that occurred in different places and at different times. *Daker v. State*, 248 Ga. App. 657, 658-660 (1), (2) (548 SE2d 354) (2001).

2. The evidence was also sufficient to find Thomas guilty beyond a reasonable doubt of one count of disorderly conduct as indicted.[3] Thomas, who was visibly upset and angry, approached the victim's home uninvited, late at night. Thomas shouted profanities at the victim's husband. He demanded to talk to the victim, calling her a "bitch." He also threatened to kill both the victim and her husband. In this context, the words used are "fighting words" because they are abusive and would naturally tend to provoke a violent resentment. See *Anderson v. State*, 231 Ga. App. 807, 809 (1) (499 SE2d 717) (1998) (calling a sheriff a " 'no-good son of a bitch' " and threatening to "kick his 'ass' " constitute fighting words). Further, Thomas' words are profane because, under the circumstances of this case, calling one's wife a "bitch" and threatening murder would "clearly offend a reasonable person's sense of decency." *Breaux v. State*, 230 Ga. 506, 508 (1) (197 SE2d 695) (1973) (defining "obscene, vulgar or profane" language). We find no error.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 24, 2005.

*Jackson & Schiavone, Michael G. Schiavone*, for appellant.
*Spencer Lawton, Jr., District Attorney*, for appellee.

---

[3] A person commits the offense of disorderly conduct when he or she,

[w]ithout provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words."

OCGA § 16-11-39 (a) (3). The indictment, while specifically charging under this Code section, also added that the abusive words used by Thomas were "profane."