A06A2492. HENNESSEY v. THE STATE.
(640 SE2d 362)

BARNES, Judge.

A jury convicted Francis Joseph Hennessey of aggravated stalking, and the trial court sentenced him to ten years, to serve four in confinement. He appeals, contending that the evidence was insufficient. We disagree and affirm.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that Hennessey had been harassing the Strickland family for several years, driving up to their house in the middle of the night, saying that God told him he was supposed to marry one of the three daughters, and constantly trying to talk to them. The State introduced evidence of prior difficulties between Hennessey and the Stricklands; for example, while the eldest daughter was standing at the trunk of her car in a gym parking lot, Hennessey drove a van up behind her and stopped, telling her she was rude not to talk to him and that she was "in rebellion." She felt unsafe trapped between the car and the van, and had to wait until Hennessey left before she could go into the gym. Another time, he stood behind the daughter in a check-out line and tried to engage her in conversation, telling her that she was pretty and talking until the daughter was able to pay for her items. She would not leave the store until she found someone she knew to walk her to her car because she was afraid of him. He seemed to always know where she was, always showing up when she was out.

Strickland finally told Hennessey several times not to contact his family, to leave them alone, and to stay off his property, but on March 25, 2005, Hennessey drove his car to the back of the Stricklands' house and got out. Strickland opened the back door and said, "Frank, you're not supposed to be here. I told you before don't come here." Hennessey yelled, "You're crazy. You're crazy," and hollered that Strickland was "rebellious to the Holy Spirit" and had "an insanity spirit." Strickland's oldest daughter heard the yelling, and her father told her Hennessey said he came to the house to get one of the daughters.

Hennessey finally left the property, and Strickland sought and obtained an arrest warrant from the Brooks County Chief Magistrate Judge against Hennessey for criminal trespass. The judge granted Hennessey a $1,000 bond on March 25, 2005, with the special condition that Hennessey was "not to enter the property of . . . Strickland or have any direct or indirect contact with any of his family members." Hennessey said he understood the condition and signed the bond.

On June 23, 2005, the daughter was entering Wal-Mart when she saw Hennessey leaving the store. He turned around and came back into the store, following her to the produce aisle. Hennessey came up behind her and asked why she had changed her hair color, to which she responded that he was not supposed to be talking to her and to leave her alone. He told her she was crazy and she threatened to call the police if he did not leave her alone. He said she was "in rebellion" and she needed to talk to him, but she walked away while he repeated that she was crazy and in rebellion. The daughter found an employee who contacted the store security guard, and showed him her copy of

the bond with the special condition. Several officers from the Thomasville Police Department arrived, and she pointed out Hennessey, whom the officers detained. One officer testified that the daughter was "literally shaking" with tears welling up in her eyes and looked "scared to death." Hennessey told them he was not there harassing anyone, that God put him there, and that two of the Strickland daughters were born to be his wife.

The officers could not confirm the validity of the bond condition at that time, and did not arrest Hennessey, but a detective in their department had assisted Strickland in obtaining the criminal trespass warrant and was aware of the bond conditions, which were still in effect. After talking to the victim and the officers who responded to the Wal-Mart call, the detective obtained a warrant for aggravated stalking and arrested Hennessey. Hennessey waived his *Miranda* rights and made oral and written statements. In the written statement he said he had seen the victim in the store and asked her why she changed her hair color, but she began yelling at him and "going crazy." Hennessey said he did not realize that the bond condition applied in Thomas County, where the store was, but thought they only applied in Brooks County. He continued:

> The girls have always been happy to see me. The father would take them away from me. He has anxiety attacks all the time, and the mother likes to control things. I believe that [the victim] has anxiety attacks like her dad too. They are rebellious against the Holy Spirit in that respect. They are out of order of the Church for what they are doing or the word of God. Their Church does not care. The mother was lying about asking me to come live with them.

Hennessey also said the Holy Spirit had told him on several occasions that he was supposed to marry the middle Strickland girl. Once she became "rebellious," he was "supposed to go on down to the younger daughter." He finished by saying, "The girls are very disrespectful and rebellious, and their parents cannot control them."

OCGA § 16-5-91 (a) provides that

> [a] person commits the offense of aggravated stalking when such person, in violation of a bond . . . prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

" '[H]arassing and intimidating' means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear [of death or bodily harm to himself or herself or to] a member of his or her immediate family, . . . and which serves no legitimate purpose." OCGA § 16-5-90 (a) (1). "Contact means to get in touch with and communicate with another person." *Durant v. State*, 222 Ga. App. 872, 873 (1) (476 SE2d 641) (1996). The bond conditions clearly prohibited Hennessey from contacting the victim, and the evidence establishes that he did so to harass and intimidate her. Even though his comments to her were not overtly threatening, given the history of Hennessey's persistent, disturbing actions, and his refusal to leave the victim alone, a rational jury could have found beyond a reasonable doubt that such acts were intended to harass and intimidate and placed the victim in fear for her safety. *Maskivish v. State*, 276 Ga. App. 701, 703 (1) (624 SE2d 160) (2005). We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Hennessey guilty beyond a reasonable doubt of aggravated stalking. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED DECEMBER 12, 2006.

*Walter E. Van Heiningen*, for appellant.

*J. David Miller, District Attorney, James L. Prine II, Assistant District Attorney*, for appellee.