## S08A1777. McDOWELL v. THE STATE.

(670 SE2d 438)

SEARS, Chief Justice.

In 2005, Milton McDowell, Jr., was convicted of felony murder and related crimes in connection with the shooting death of his sister Tiara McDowell's ex-boyfriend, Christopher Champion.[1] At trial, the defendant admitted killing Champion but claimed that the killing was legally justified on grounds of self-defense and defense of others.

---

[1] For ease of reading, Milton McDowell, Jr., will be referred to throughout as "the defendant," Christopher Champion will be designated "Champion," and Tiara McDowell will be called by her given name, "Tiara." No disrespect to Ms. McDowell is intended.

The defendant appeals, arguing as his sole enumeration of error that the evidence presented at trial was insufficient to support the verdict. Finding no merit in this argument, we affirm.[2]

The incident in question took place on February 17, 2004. The defendant's sister, Tiara, had been dating and living together on and off with Champion, a drug dealer, for just over a year. The relationship was a violent one, and Tiara had just broken things off. That day, Champion repeatedly made harassing phone calls to her, demanding that she bring him clothes he had left at her apartment. She was scared of Champion and asked the defendant to spend the night with her. Tiara testified at trial that she never told her brother about Champion's threats against her. According to the defendant, who took the stand at trial, his sister told him only that she needed to talk, and when he inquired about Champion, she said simply that he was getting on her nerves.

Tiara came by in her van and picked up the defendant, his wife, and a 22-month-old nephew. She had Champion's clothes with her, and the defendant agreed to accompany her to an apartment complex where Champion dealt drugs so that she could drop them off. Champion called Tiara and told her to leave the clothes on the porch of an abandoned apartment, assuring her that he would not be there when she arrived.

Champion was with fellow drug dealer Marcus Avant when he called Tiara, and Avant testified at trial that when Tiara pulled up in the van, Avant was sitting in a downstairs stairwell of the apartment complex where he and Champion dealt drugs. Tiara pulled the van up close to the porch, and just then, Champion came around the building and walked directly up to the driver's side window. The couple started arguing.

When Champion saw the defendant sitting in the backseat, he accused Tiara of "bringing someone to do something to him." The defendant jumped out of the van and started talking to Champion

---

[2] The defendant committed his crimes on February 17, 2004. On May 11, 2004, the Fulton County grand jury indicted him for malice murder, two counts of felony murder and the predicate felonies of aggravated assault for shooting Champion and possession of a firearm by a convicted felon, aggravated assault for kicking Champion, and possession of a firearm during the commission of a felony. The defendant waived his right to a jury trial. At the conclusion of a week-long bench trial conducted June 6-10, 2005, the trial court acquitted the defendant of malice murder but found him guilty of all other charges. The aggravated assault conviction for the shooting merged with the felony murder conviction based on it, and the second felony murder conviction and the conviction for the predicate felony of possession of a firearm by a convicted felon were vacated by operation of law. The trial court sentenced the defendant to life in prison for felony murder, five years consecutive for aggravated assault based on kicking Champion, and five years concurrent for possession of a firearm during the commission of a felony. The defendant filed a motion for new trial on June 13, 2005, which the trial court denied on July 9, 2007. The defendant filed a timely notice of appeal on July 12, 2007, and the case was submitted for decision on briefs on September 1, 2008.

"like he wanted to fight." In an effort to defuse the situation, the defendant's wife got out of the van, showed Champion the baby, told Champion the defendant was her husband, and said they "did not come for this." The defendant then got back in the van, and Tiara began putting the bags of clothes on the porch.

Champion picked up a bag of clothes and threw it back in Tiara's face. Tiara started yelling, and the defendant jumped out of the van a second time. The defendant approached Champion, pulled out a gun, and shot him, prompting Tiara to exclaim, "You done shot him!" A struggle for the gun ensued, and several more shots were fired.

Champion then jumped off the porch, and the defendant fired at him again. Champion fell to the ground, and the defendant came up and started kicking him and cursing at him before shooting him twice more. The defendant then turned and walked off down the hill. Tiara rushed to Champion's side for a moment but then got back in the van with the defendant's wife and the baby and drove away.

Latron Perdue, another drug dealing associate of Champion, also witnessed the incident. According to Perdue's trial testimony, when he pulled into the parking lot, he saw the van parked next to the porch. After parking his car, Perdue walked towards the van and saw a man jump out of the passenger side of the backseat, pull a gun, and shoot Champion. The assailant fired another round as Champion jumped off the porch, and Champion fell to the ground. The man walked up to Champion, kicked him, and shot him again. The shooter walked off, and the van drove away shortly after. Perdue called 911, but Champion died before help arrived.

The defendant, his wife, and Tiara all testified, contrary to the testimony of Avant and Perdue, that Champion was the initial aggressor. According to them, Avant was not in the stairwell when they arrived but instead was sitting in an upstairs window. When Champion saw the defendant in the van, he yelled to Avant to throw him the keys to an apartment so he could get "the strap" (i.e., a gun). When Avant complied, Champion ran briefly into the apartment and returned with his hand inside his jacket.

The defendant testified that he got out of the van at that point and started walking towards Tiara, telling her to get back in the van. Champion called for a bystander to clear the area because he was going to "wet the place up" (i.e., start shooting), and when Tiara turned to get into the van, Champion pulled out a gun and pointed it at her back. The defendant lunged at Champion to prevent him from shooting Tiara, and the two men wrestled for control of the gun. During the struggle, several shots were fired that struck Champion.

The defendant eventually succeeded in getting control of the gun after Champion fell to the ground, knocking the gun out of his hand

in the process. The defendant kicked the gun out of Champion's reach and started walking off when he noticed someone approaching, who was later identified as Perdue. According to the defendant, when he saw Perdue pick up the gun, he started running down the hill towards the train station.

Tiara and the defendant's wife both testified that they did not witness the shooting. They also testified that they did not see Champion with a gun. Another sister of the defendant testified that she heard the defendant instruct Tiara not to tell the police that the defendant was with her when Champion was shot.

The medical examiner testified that Champion was shot three times, once in the left shoulder, once in the back, and once in the buttocks. He observed that the path of the bullets to the back and buttocks was consistent with Champion's having been shot while either hunched over or curled up in the fetal position. A microanalyst testified that there was gunshot residue on Champion's left hand but said it could be found there even if Champion did not fire the gun.

The defendant contends the evidence was insufficient to enable the trier of fact to reject his claims of self-defense and defense of others and convict him of the offenses charged because the testimony of Avant and Perdue was not credible due to their criminal records, their past associations with Champion, and discrepancies between their pretrial statements and trial testimony. The defendant insists that at the very least, the evidence was insufficient with respect to the conviction for aggravated assault by kicking, because the medical examiner testified that he found no wounds on Champion's body consistent with his having been kicked.

These arguments are meritless. With respect to the kicking, the medical examiner testified that the autopsy did not affirmatively *prove* that Champion was kicked prior to his death. He did not testify that the medical evidence affirmatively *disproved* that the defendant kicked Champion. Moreover, several eyewitnesses, including Tiara, testified at trial that the defendant kicked Champion while he was lying on the ground.

At best, the defendant's arguments are all based on nothing more than his disagreement with the credibility determinations made by the trial judge. However, decisions regarding credibility are uniquely the province of the trier of fact.[3] Having reviewed the record in the light most favorable to the verdict, we have no difficulty concluding that the evidence presented at trial was sufficient to

---

[3] *Lewis v. State*, 283 Ga. 191, 192 (657 SE2d 854) (2008); *Moore v. State*, 283 Ga. 151, 153 (656 SE2d 796) (2008). See also *Lessee of Ewing v. Burnet*, 36 U. S. (11 Pet.) 41, 50-51 (9 LE 624) (1837) ("[I]t is the exclusive province of the [trier of fact] . . . to judge . . . the credibility of the witnesses, and the weight of their testimony. . . .").

disprove self-defense and defense of others beyond a reasonable doubt and to prove, also beyond a reasonable doubt, the defendant's guilt for felony murder and each other crime for which he was convicted.[4]

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 17, 2008.

*Carl P. Greenberg,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General,* for appellee.

---

[4] *Jackson v. Virginia,* 443 U. S. 307, 309 (99 SC 2781, 61 LE2d 560) (1979); *In re Winship,* 397 U. S. 358, 361-364 (90 SC 1068, 25 LE2d 368) (1970).