A08A1807. DAVIDSON v. THE STATE.
(673 SE2d 91)

PHIPPS, Judge.

After a bench trial, Nicholas Davidson was convicted of the aggravated stalking of his former girlfriend, S. W., with whom he had a child. On appeal, he contends that the evidence was insufficient. Because the evidence was sufficient, we affirm.

> Upon a finding of guilt following a bench trial, the presumption of innocence no longer applies, and the appel-

late court construes the evidence in favor of the judge's determination of [the defendant's] guilt. The appellate court does not weigh the evidence or determine witness credibility, but merely determines the sufficiency of the evidence.[1]

So viewed, the evidence showed that after S. W. ended her relationship with Davidson in August 2006, Davidson persisted in calling her by telephone, coming to her workplace, and threatening her. One evening in April 2007, Davidson appeared at S. W.'s home, knocked on her front door, and asked her to come outside and talk with him. She refused, telling Davidson that he was not supposed to be at her home because there was an outstanding peace warrant against him. Davidson then went to the back of S. W.'s home and began beating on the back door, thereby breaking the door lock, although the door did not open. Davidson next went to S. W.'s bedroom window and broke it before leaving. S. W. reported this incident to police.

Later that night, Davidson telephoned S. W. numerous times. When she finally answered, she asked him, "Why [did] you do that?" He responded, "Yes, I did and you're next." When she asked him what he meant by that, he said that he would be waiting for her with a shotgun the next morning when she left her home for work. S. W. called the police, and Davidson was arrested and charged with issuing a terroristic threat.

While in jail, Davidson continued to attempt to contact S. W. He called her place of employment, asking other employees on various shifts for S. W.'s telephone number; he called her sister's home; and he called one of S. W.'s friends, Latarsha Hackett.

Davidson entered a negotiated guilty plea and was convicted on September 6, 2007, of issuing a terroristic threat. He was released from custody after being sentenced to five years on probation. As a condition of probation, the court ordered: "Stay away from [S. W.] — No Contact Whatsoever."

By the next morning, Davidson had convinced S. W.'s friend, Hackett, to use the three-way feature of her telephone service to connect him with S. W. S. W., who had not known that Davidson had been released from jail, gave this account of the telephone call.

I answered my phone. It was Ms. Hackett, and she said, "Nick on the phone." I don't recall saying okay, but I do remember her saying, "Nick on the phone," you know, and

---

[1] *Boyd v. State*, 291 Ga. App. 528, 529-530 (662 SE2d 295) (2008) (footnotes omitted).

the phone clicked over and we all three was on the phone. And he said, "Bring my son to come see me." And I said, "Well, [our toddler] can't come to the jail." And he said, "Well, I'm out of jail. Bring my son to come see me. Bring him over to [Davidson's friend's] house." . . . And I said if he want to see him, he can meet me at the police department to see him. I had no problem with that, because I was concerned for my safety. And at that point he said, no, he wasn't going to meet his son at no police department, this, whatever; and when he see me, he got something for me. He went on from that point, started threatening me, so I hung up the phone.

S. W. called the police and reported what Davidson had done.

The indictment in this case charged Davidson with committing aggravated stalking on September 7, 2007, by contacting S. W., in violation of a condition of probation, at her home, without her consent, and for the purpose of harassing and intimidating her. In his defense at trial, Davidson called Hackett to testify. She recounted that she had met Davidson through S. W., that he had lived with S. W., that she had prepared each of their tax returns for 2006, and that she had used S. W.'s address for them in doing so. Regarding the three-way telephone call she placed on September 7, Hackett testified that Davidson had called her requesting initially S. W.'s new telephone number. Hackett had been aware that S. W. had changed her number "because of what was going on," and therefore, Hackett refused to give S. W.'s new telephone number to Davidson. But she agreed to use the three-way calling feature to place the call for him. She testified that she did not connect S. W. with Davidson, however, until S. W. agreed to talk with him, recalling, "I knew the nature of the situation. I knew what was going on. I was there on a couple of incidents." Hackett testified that when S. W. answered the telephone, "I said, 'Nick is on the other line. Do you want to talk to him?' And she said, 'Yes.' " According to Hackett, only then did she "click over" to connect Davidson with S. W. She overheard the two discuss taxes and their child.

Davidson contends that the evidence was insufficient to sustain his conviction for aggravated stalking.

A person commits the offense of aggravated stalking when such person, in violation of a . . . condition of probation . . . in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of

the other person for the purpose of harassing and intimidating the other person.[2]

"[H]arassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.[3]

Davidson claims that there was no evidence that he contacted S. W. without her consent and for the purpose of harassing and intimidating her. He argues that Hackett's testimony showed that S. W. agreed to talk to him and that he did not contact her to harass or intimidate her, but called for two legitimate purposes: to discuss his tax returns and to arrange a visit with their child.

Nevertheless, "the trial judge was not required to believe [Davidson's witness], nor to disbelieve the state's witness."[4] S. W.'s testimony authorized the trial judge to find that she did not consent to Davidson's contacting her on September 7. S. W. also testified that, during the five prior months when Davidson was in jail, she did not invite him to contact her, made no attempt to speak with him, and had complained to jail personnel that he was calling her. S. W. further recounted that when she learned during the three-way call that Davidson was no longer in jail, her "heart dropped," and she was fearful of going outside her home because she was concerned that he would show up again. Viewed in the light most favorable to the trial judge's determination of Davidson's guilt, the evidence was sufficient to find that S. W. did not consent to the contact at issue.[5]

Although Davidson contends there is no evidence that he contacted S. W. on September 7 for the purpose of harassing or intimidating her, "[i]ntent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all

---

[2] OCGA § 16-5-91 (a); see *State v. Carlisle*, 280 Ga. 770, 771 (1) (631 SE2d 347) (2006).

[3] OCGA § 16-5-90 (a) (1).

[4] *Boyd*, supra at 530 (footnote omitted).

[5] See generally *Revere v. State*, 277 Ga. App. 393, 394 (1) (a) (626 SE2d 585) (2006) (victim's previous consent to contact after the court order was issued did not alter the fact that, on the occasion underlying the charge of aggravated stalking, she did not consent and repeatedly asked the defendant to leave); cf. *Bragg v. State*, 285 Ga. App. 408, 410 (1) (646 SE2d 508) (2007) (evidence was insufficient to find consent where victim testified that she agreed to meet with the defendant).

other circumstances connected with the act for which the accused is prosecuted."[6]

> Furthermore, where the defendant offers an explanation of circumstantial facts or an alternative hypothesis of events, the reasonableness of that explanation is for the factfinder. Because the factfinder has heard the witnesses and observed them testify, it is considered more capable of determining the reasonableness of the hypothesis produced by the evidence or lack thereof than is an appellate court.[7]

Given the history of Davidson's ongoing actions, threats, and refusal to leave S. W. alone, a rational trier of fact could have found beyond a reasonable doubt that the contact at issue was for the purpose of harassing and intimidating S. W.[8]

Having viewed the evidence in the light most favorable to the trial judge's determination of Davidson's guilt, we conclude that there was sufficient evidence authorizing the trial judge to find him guilty beyond a reasonable doubt of the crime of aggravated stalking.[9]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JANUARY 27, 2009.

*Rachelle D. Hunter*, for appellant.

*J. Gray Conger, District Attorney, William D. Kelly, Jr., Assistant District Attorney*, for appellee.

---

[6] *Phillips v. State*, 278 Ga. App. 198, 200 (1) (628 SE2d 631) (2006) (citation and punctuation omitted); see *Thomas v. State*, 276 Ga. App. 79, 80 (1) (622 SE2d 421) (2005).

[7] *Boyd*, supra (footnote omitted).

[8] See *Hennessey v. State*, 282 Ga. App. 857, 860 (640 SE2d 362) (2006); *Phillips*, supra; *Thomas*, supra.

[9] See generally *Boyd*, supra.