## A10A0535. PLACANICA v. THE STATE.
(693 SE2d 571)

MIKELL, Judge.

Joseph Placanica was convicted at a bench trial of a single count of stalking, a misdemeanor.[1] On appeal from the denial of his motion for new trial, he raises the general grounds. Finding the evidence sufficient to support his conviction, we affirm.

> Upon a finding of guilt following a bench trial, the presumption of innocence no longer applies, and on appeal, the appellate court construes the evidence in favor of the judge's findings of fact. The appellate court does not weigh the evidence or determine witness credibility but merely determines the sufficiency of the evidence.[2]

Properly viewed, the evidence in the case at bar shows that Placanica, who was 40 years old and married, entered into a sexual relationship with W. W. in November 2007, when she was 16 years old. Placanica knew W. W. from middle school, where he had been her eighth-grade science teacher. W. W. testified that Placanica asked for her phone number ostensibly to babysit, but then located her on the internet and began instant messaging her. W. W. testified that they kept the relationship a secret, because Placanica was married; and that they communicated through text messages, for which Placanica kept an extra cell phone. W. W. called him "Jack."

In April 2008, W. W. began dating a young man at work, "Harold." She continued to see Placanica. W. W.'s relationship with Harold ended in June, and she decided to break it off with Placanica. Finally, at the end of July, she told Placanica to leave her alone. According to W. W., she was "pretty much screaming at him." Placanica continued to pursue her. One day at her workplace, a nursery, Placanica left a bag on the hood of her car with a cell phone, money, and a letter. W. W. testified that the incident left her "shaking" and "really scared." On another occasion, Placanica posted signs all the way down the road from her house to work. The signs said "Jack" was sorry and wanted her to come back. Kristen Smith, the assistant manager at the nursery, testified that W. W. called her after this incident, crying because Placanica would not leave her alone. Smith testified that W. W.'s frustration turned into fear because she could not control the situation.

Shortly thereafter, Placanica showed up at the gym where W. W. worked out. W. W. testified that she "started shaking" and tried to

---

[1] OCGA § 16-5-90 (b).

[2] (Citations omitted.) *Thomas v. State*, 276 Ga. App. 79 (622 SE2d 421) (2005).

leave. She went to her car, and Placanica called her; he was sitting in his car in the parking lot. W. W. went back inside and told a personal trainer, Chad, that she was "creeped out." Chad testified that he used W. W.'s phone to call Placanica and tell him to stop bothering her. During the same week, Placanica contacted her again over the internet on Facebook. He used a different name, Vincent Hopper. W. W. suspected that it was Placanica because his middle name is Vincent and he asked personal questions. W. W. called a friend of her father for assistance.

The friend, Benjamin Tibbs, is a police officer who works as an investigator for an insurance company. Tibbs testified that W. W. told him that she had tried to break off her relationship with her former teacher but he continued to pursue her and contact her. Tibbs contacted Cobb County police, and W. W. met with Detective Kenneth Adamczyk of the crimes against children unit of the police department. Adamczyk testified that W. W. informed him that she had been having an intimate relationship with Placanica, her eighth-grade science teacher; that she was trying to break it off; that he had posted signs near her house, recently joined her gym, and contacted her on Facebook under a false identity; that he knew where she lived and worked and had come by her workplace; and that she felt overwhelmed, upset, and scared by his actions.

Adamczyk brought Placanica in for an interview, and he waived his *Miranda* rights. His statement was videotaped; the DVD was played for the court, although it has not been included in the record on appeal. However, Adamczyk testified that Placanica told him that he was in love with W. W.; that he had "dropped the atomic bomb of hurt" on W. W.; that he did not know why she was so upset or why she had broken off the relationship; that he had sent her "tons of text messages" trying to understand why. Placanica admitted to Adamczyk that W. W. had cut off contact with him about a month before the interview.

"A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."[3] "Harassing and intimidating" is defined as "a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety . . . by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose."[4]

---

[3] OCGA § 16-5-90 (a) (1).
[4] Id.

In two related enumerations of error, Placanica argues that his conviction cannot be sustained because there was no evidence that he contacted W. W. without her consent or placed her in reasonable fear for her physical safety. We disagree.

Evidence that after W. W. "screamed" at Placanica to "leave her alone," Placanica persisted in making unwanted contact with her by showing up at her gym, sending her "tons of text messages," and seeking her out on the internet using a false name, among other things, authorized the trial court to find beyond a reasonable doubt that Placanica contacted W. W. without her consent.[5]

Further, there was ample evidence that Placanica contacted W. W. for the purpose of harassing and intimidating her. W. W. testified that after Placanica posted signs on her street, showed up at the gym, and left a package on her car at work, she was "scared" and "shaking." Smith, the assistant manager at W. W.'s work, testified that W. W. was crying and verbalized "fear" of Placanica after the incident at work. W. W. told the police that she was "scared" by his actions. Chad, the personal trainer at the gym, testified that W. W. seemed "scared" and "upset" when Placanica showed up. This evidence was sufficient for the trial judge to infer that Placanica caused W. W. emotional distress by placing her in reasonable fear for her safety.[6]

> A defendant need not engage in unequivocally hostile conduct or make explicit threats in order to be convicted of stalking. Even behavior that is not overtly threatening can provide the requisite degree of intimidation and harassment if it is ongoing, repetitious, and engaged in despite the communicated wishes of the victim.[7]

The evidence recounted above is sufficient to support Placanica's

---

[5] See, e.g., *Davidson v. State*, 295 Ga. App. 702, 703, 705 (673 SE2d 91) (2009) (after victim ended relationship with defendant, he persisted in calling her, coming to her workplace, and threatening her; evidence showed contact without consent); *Revere v. State*, 277 Ga. App. 393, 394 (1) (a) (626 SE2d 585) (2006) (victim's previous consent to contact did not bar conviction of aggravated stalking as victim repeatedly asked defendant to leave); *Johnson v. State*, 260 Ga. App. 413, 414 (1) (579 SE2d 809) (2003) (after defendant and his wife separated, defendant appeared uninvited where victim was a patient, demanded to see her, and refused to leave until informed that the police had been called).

[6] See, e.g., *Krepps v. State*, 301 Ga. App. 328, 329 (1) (687 SE2d 608) (2009) (although defendant did not threaten victim, phone calls caused defendant "quite a bit of concern" about his safety) (punctuation omitted); *Hennessey v. State*, 282 Ga. App. 857, 860 (640 SE2d 362) (2006) (although defendant's comments were not threatening, his actions authorized jury's finding that his actions placed victim in fear for her safety).

[7] (Footnote omitted.) *Krepps*, supra.

conviction of stalking beyond a reasonable doubt.[8]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MARCH 31, 2010.

*Melinda D. Taylor*, for appellant.

*Barry E. Morgan*, Solicitor-General, *Melissa C. Brickey, Jason B. Fincher, Jessica K. Moss*, Assistant Solicitors-General, for appellee.

---

[8] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Adkins v. State*, 221 Ga. App. 460, 462 (471 SE2d 896) (1996) (defendant convicted of stalking after delivering harassing and intimidating letter to victim's workplace).