**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 28, 2012**

# In the Court of Appeals of Georgia

A12A1201. TURNBULL v. THE STATE.

PHIPPS, Presiding Judge.

After a bench trial, Neville Turnbull was convicted of making harassing phone calls[1] to his former girlfriend, N.C. He argues on appeal that the evidence was insufficient and that he was deprived of effective assistance of counsel. We affirm.

1. When an appellant challenges the sufficiency of the evidence to support the conviction, "the relevant question is whether, after viewing the evidence in the light

---

[1] See OCGA § 16-11-39.1 (a) (offense of harassing phone calls is committed if a person, inter alia, "telephones another person repeatedly, whether or not conversation ensues, for the purpose of annoying, harassing, or molesting another person").

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]

The state adduced the following evidence. In late November 2009, after almost a year of dating, Turnbull and N. C. broke up, and Turnbull moved out of the residence they were sharing. He took with him most of his belongings. Thereafter, Turnbull called N. C. numerous times and appeared, without invitation and without notice, at her residence. For example, there were times when she opened her garage door at about 6:00 or 7:00 a.m. to find Turnbull standing nearby; once, she woke up at about 1:30 a.m. and was startled because Turnbull was standing over her. On these occasions, typically, Turnbull claimed that he needed the remainder of his belongings. And N. C. replied that she had not yet compiled them; that when she had done so, she would call him to arrange a time for him to get all of them at once; and that, meanwhile, he should stop contacting her, reiterating that she no longer wanted a relationship with him, his companionship, nor his telephone calls.

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original).

The weekend of December 19, 2009, Turnbull called N. C. at least 15 to 20 times. She repeatedly told him to come pick up his belongings and to stop calling her. He did neither. She testified, "I was just at my wit's end. I wanted to take him everything so there would be no excuse for him to further contact me." At a predawn hour on December 20, when N. C. believed that Turnbull would be at work until 7:00 a. m., she took all of his remaining belongings and dropped them off, along with his dog, at his apartment. She left the items on the apartment porch, and she secured the dog in a patio closet.

Within a few hours, early on December 20, 2009, N. C. was awakened at her residence when the doorbell rang. She saw Turnbull's car parked outside, ignored the bell, and readied herself for work. But when she attempted to back out of her driveway, Turnbull maneuvered his vehicle to block hers from passing down her driveway. He refused to move his car, despite her protests, so she drove across her neighbor's yard and arrived at her workplace shortly before 9:00 a.m.

By 10:30 a.m., Turnbull had made more than four or five telephone calls to N. C.'s workplace – some she accepted, others she did not. When she did not, Turnbull left messages for her with her coworkers. When she accepted his calls, he was initially apologetic, but then became threatening. He related to her that he was

3

upset because she had brought his belongings to him the night before. But he also told her that he had called the police and insisted, "I'm going to make sure you go to jail." By this time, N. C. had already consulted with police about the possibility of obtaining a protective order against Turnbull. She told him so, in response to his threats, revealing further that she had been advised that his conduct constituted harassment. She ended those telephone calls that she accepted by telling him to stop calling her at her workplace, to stop calling her at her home, to stop calling her cellphone, and to stop calling her friends. A few days later, she petitioned for a protective order.

Turnbull, the only defense witness, gave his account of the relationship breakup, as well as the nature and purpose of his subsequent telephone calls to her and appearances at her residence. He had determined that N. C. was cheating and sending flirtatious text messages to other men. When he confronted her, she declared: "[O]kay, it's over." Turnbull described, "I was shocked."

Turnbull revealed further on direct examination:

Q:     [A]t what point did you discover your property was sitting on the porch where you now reside[ ]?

A:     When I pulled up in my driveway.

Q:     So prior to that – Because you had been at work, correct?

A:     Yes, sir.

Q:     So prior to pulling into your driveway, that was the first time you knew your belongings were there?

A:     Yeah, I saw them laid out – I'm on the bottom apartment, and I saw them just laid out, stacked up there as soon as I was pulling in.

According to Turnbull, it was not he who rang N. C.'s doorbell early on December 20; it was the police. Because N. C. had refuted his prior attempts to collect the remainder of his belongings, he had summoned the police to meet him there that morning. When the responding officers received no answer, they left the scene about 20 minutes later; Turnbull stayed. As soon as the police drove away, the garage door opened and N. C. cruised past him – laughing, he recalled.

Turnbull drove to his apartment and called N. C.'s workplace. He was asked on direct examination, "And when you were calling her at her job, after you found that your stuff was on the porch, what was the purpose of calling her?" He answered, "It was to where my dog was because . . . [h]e wasn't on the porch. . . . someone could've taken the dog away while I was, you know, at work because I didn't even

5

know my stuff was there." On cross-examination, the issue was revisited with Turnbull:

Q:     But your property . . . was returned on December 19; is that right?

A:     It was returned. There was some stuff missing actually, which I made a report to Cobb County police station.

Q:     Okay. But it was returned?

A:     It was on the porch.

. . .

Q:     And after that, December 20th, you kept making calls to her; isn't that right?

A:     That's a negative.

Indeed, Turnbull denied making any calls – either that day or during that weekend – for the purpose of harassing N. C. Further, Turnbull maintained that he had neither told her he would put her in jail nor otherwise threatened her.

Turnbull's trial lawyer asked for a directed verdict, which motions were denied.[3] Turnbull's trial lawyer took the position during closing argument that the

---

[3] The motions argued that venue had not been proved. On motion for new trial, however, Turnbull's post-conviction lawyer raised, but then affirmatively abandoned, this argument. Also, see *Woodham v. State*, 253 Ga. App. 112, 113 (1) (558 SE2d

6

evidence showed that Turnbull was calling his former girlfriend for the legitimate purpose of regaining possession of his belongings and that the state had failed to prove that he had the intent to harass her. After the state delivered its closing argument, the trial judge remarked that she had found parts of Turnbull's testimony inconsistent with other parts and that he was not credible. Judgment was entered upon the guilty finding.

On appeal, Turnbull disputes the sufficiency of the evidence, arguing specifically: "There was adequate evidence to support his contention that his calls to [N. C.] were for the purpose of retrieving his property, not to harass [her]." This argument is "nothing more than [Turnbull's] disagreement with the credibility determinations made by the trial judge. However, decisions regarding credibility are uniquely the province of the trier of fact."[4]

---

454) (2001) ("[T]he trial court could not have directed a verdict of acquittal because there is no verdict in a bench trial. Therefore, even if a motion for a directed verdict was made, such a motion has no meaning when a case is tried without a jury. The issue is whether the evidence was sufficient at trial to support a conviction under the standards of *Jackson v. Virginia*, [supra].") (citations and punctuation omitted).

[4] *McDowell v. State*, 284 Ga. 666, 669 (670 SE2d 438) (2008) (footnote omitted).

In a bench trial, the trial judge sits as the trier of fact.[5] In that role, the trial judge is not required to believe a defendant's testimony, nor to disbelieve the state's witnesses.[6] The trial judge "may accept or reject any part of a witness's testimony."[7]

Upon a finding of guilt following a bench trial, the presumption of innocence no longer applies, and the appellate court construes the evidence in favor of the judge's determination of the defendant's guilt. The appellate court does not weigh the evidence or determine witness credibility, but merely determines the sufficiency of the evidence.[8]

Although Turnbull maintains that his calls to N. C. were not intended to harass her,

intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. Furthermore, where the defendant offers an explanation of circumstantial facts or an alternative hypothesis of events, the reasonableness of that explanation is for the factfinder. Because the factfinder has heard the witnesses and observed them testify, it is

---

[5] *Corsini v. State*, 238 Ga. App. 383 (1) (519 SE2d 39) (1999).

[6] *Davidson v. State*, 295 Ga. App. 702, 705 (673 SE2d 91) (2009).

[7] *Corsini*, supra.

[8] *Davidson*, supra at 702-703 (footnote omitted).

considered more capable of determining the reasonableness of the hypothesis produced by the evidence or lack thereof than is an appellate court.[9]

Having construed the evidence in the light most favorable to the trial judge's determination of Turnbull's guilt, we conclude that there was sufficient evidence for the trial judge to have found beyond a reasonable doubt that Turnbull placed telephone calls to N. C. for the purpose of harassing her.[10]

2. Turnbull contends that the trial court erred in rejecting his claim of ineffective assistance of counsel.

To prevail on an ineffectiveness claim, a defendant must establish, pursuant to *Strickland v. Washington*,[11] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[12] Both the performance and

---

[9] Id. at 705-706 (punctuation and footnotes omitted).

[10] See OCGA § 16-11-39.1; see generally *Davidson*, supra at 706 (history of defendant's ongoing actions, threats, and refusal to leave his former girlfriend alone authorized a rational trier of fact to find beyond a reasonable doubt that the contact at issue was for the purpose of harassing and intimidating her).

[11] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[12] *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact.[13] In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review the trial court's legal conclusions de novo.[14] "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, it is not incumbent upon the reviewing court to examine the other prong."[15]

(a) Turnbull asserts that his trial lawyer failed to adequately prepare him for testifying. He claims that his lawyer did not meet with him a sufficient number of times and he points out that the trial transcript does not show that he was advised about his right not to testify.

At the hearing on Turnbull's motion for new trial, Turnbull's lawyer testified about the number of times he met with Turnbull prior to trial. The lawyer recalled that he advised Turner regarding his right to testify and his right not to testify. Additionally, the lawyer recollected, he had particularly discussed with Turnbull the

---

[13] *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000).

[14] Id. at 88 (4).

[15] *Battles v. State*, 290 Ga. 226, 229 (2) (719 SE2d 423) (2011) (citation omitted).

strategy of using his testimony to support his defense – that he had made telephone calls to N. C. for the sole, legitimate purpose of regaining possession of his belongings. Further, the lawyer testified, before calling Turnbull to the stand, he had again confirmed with Turnbull that he wanted to testify.

"The fact that [Turnbull's] trial attorney met with him for an amount of time claimed to be inadequate is not dispositive, as there exists no magic amount of time which counsel must spend in actual conference with his client."[16] Similarly, "[Turnbull's] intimation that the trial court was required, on the record, to advise [him] directly of [his] right to testify [or not] is without merit."[17] What is more, Turnbull proffered nothing regarding how additional preparation would have changed his testimony. In the absence of a proffer showing how further preparation would

[16] *Morgan v. State*, 275 Ga. 222, 228 (10) (564 SE2d 192) (2002) (citations omitted); see *Bunn v. State*, 307 Ga. App. 381, 385 (3) (a) (705 SE2d 180) (2010) (there is no magic amount of time which a counsel must spend in preparing for trial in order to provide a client with adequate counsel; each case must be judged upon its own circumstances and in light of its own degree of complexity).

[17] *Clements v. State*, 299 Ga. App. 561, 564 (2) (683 SE2d 127) (2009) (citation and footnote omitted); see *Gibson v. State*, 290 Ga. 6, 9 (4) (717 SE2d 447) (2011) (courts have no duty to advise a defendant of the right to testify or to determine on the record whether the defendant's decision is voluntary, knowing, and intentional; courts are under no obligation to place a defendant's decision whether to testify on the record).

11

have changed his testimony, Turnbull cannot establish error as alleged on the part of trial counsel.[18] Given the foregoing, the trial court was authorized to conclude that Turnbull failed to carry his burden of proving that his trial counsel performed deficiently with respect to advising him about and preparing him for testifying.[19]

(b) Turnbull contends that his trial lawyer was not adequately prepared to try the case. He complains that the lawyer did not employ an investigator. Turnbull complains also that, although he had provided his lawyer with a list of witnesses and documents, his lawyer did not present them at trial.

As examples, Turnbull cited at the hearing on motion for new trial: his mother; Cobb County and Clayton County police officers and their police reports; logs of telephone calls between N. C. and himself; and the transcripts of text messages, 911 calls, and the hearing on N. C.'s petition for a protective order against him.

---

[18] See *Strong v. State*, 275 Ga. 465, 466-467 (2) (b) (569 SE2d 523) (2002) (rejecting claim that counsel failed to adequately prepare defendant for testifying in his own defense, where defendant failed to offer any specific reason why his preparation was inadequate or how it might have been improved and where defendant failed to point out anything in his trial testimony which was harmful to his case); *Donald v. State*, 312 Ga. App. 222, 229-230 (4) (f) (718 SE2d 81) (2011).

[19] See *Morgan*, supra; *Strong*, supra; *Donald*, supra; *Howard v. State*, 310 Ga. App. 659, 665-666 (3) (b) (714 SE2d 255) (2011); *Bunn*, supra; *Clements*, supra.

Turnbull has failed to show that any of these individuals or documents would have aided his defense. None of the individuals testified at his new trial hearing, and Turnbull presented no legally acceptable substitute for their testimony.[20] Other than the transcript of the hearing on N. C.'s petition for a protective order and a single Cobb County police report, Turnbull did not introduce in evidence any document.[21] The protective order hearing transcript shows that N. C. filed the petition against Turnbull on December 22, 2009, that she gave extensive testimony as to why she was seeking a protective order, and that the court stated at the end of the hearing that it would grant the petition.

---

[20] See *Dickens v. State*, 280 Ga. 320, 321-323 (2) (627 SE2d 587) (2006) (holding that where a defendant contends that trial counsel was ineffective in failing to call a witness to testify on his behalf, he must call the witness to testify at the motion for new trial hearing or present some legally acceptable substitute in order to show that, if the witness had testified, there is a reasonable probability the outcome of the trial would have been different).

[21] See generally *Bunn*, supra at 385 (3) (c) (failure of trial counsel to employ evidence cannot be deemed to be "prejudicial" in the absence of a showing that such evidence would have been relevant and favorable to the defendant); *Smith v. State*, 294 Ga. App. 692, 703 (10) (a) (iii) (670 SE2d 191) (2008) (because purported documents were not part of the record, it was impossible to determine whether they actually would have helped defense, and thus appellant failed to establish that his trial lawyer performed deficiently).

Turnbull's trial counsel explained at the new trial hearing that he had concluded that the hearing transcript was prejudicial to Turnbull's defense. And Turnbull has made no effort to show that the transcript nonetheless should have been adduced into evidence. Nor has Turnbull made any effort to show that the Cobb County police report would have benefitted his defense.

Essentially, Turnbull has made only bare allegations that his trial lawyer performed deficiently by not presenting additional evidence helpful to his defense. But Turnbull has not identified any person whom counsel unreasonably failed to call as a witness, nor has Turnbull identified any document that counsel unreasonably failed to introduce at trial. "There is a strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct, and generalized claims to the contrary not supported by affirmative evidence are insufficient to show deficient performance."[22]

Given the foregoing, the trial court was authorized to conclude that Turnbull failed to carry his burden of proving that his trial counsel performed deficiently with

---

[22] *Shank v. State*, 290 Ga. 844, 848 (5) (a) (725 SE2d 246) (2012) (citation omitted); see *Dickens*, supra at 321 (2) (the decision as to which defense witnesses to call is a matter of trial strategy and tactics).

respect to presenting at trial the testimony of additional witnesses or documentary evidence.[23]

(c) Turnbull claims that his lawyer failed to adequately explain to him the waiver of a jury trial, asserting further that the record fails to provide adequate proof that he made a knowing and intelligent waiver.

The trial transcript shows that, prior to opening statements, the trial court asked Turnbull whether he knew that having a bench trial meant that no jury would hear his case, whether he had discussed a bench trial with his lawyer, whether anyone had threatened him or promised him anything regarding waiver of his right to a jury trial, whether he was under the influence of any drug, and whether the decision to proceed with a bench trial was one he had voluntarily made. Turnbull affirmed on the record that he understood that no jury would hear his case, that he had discussed a bench trial with his lawyer, that no one had threatened him or promised him anything in connection with foregoing his right to a jury trial, that he was not under the influence of any drug, and that he was voluntarily choosing to proceed with a bench trial. And

---

[23] See *Morgan*, supra at 227 (10) (rejecting claim that trial counsel erred by not calling certain witnesses and introducing various documents, where defendant did not show that the witnesses or the documents existed, were available, and would have been favorable to his defense); see also *Shank*, supra; *Dickens*, supra.

15

at the motion for new trial hearing, Turnbull's trial attorney testified that he had discussed with Turnbull whether to proceed with a bench trial versus a jury trial and that he had informed Turnbull that the final decision was his (Turnbull's) to make. In light of the foregoing, the trial court was authorized to conclude that Turnbull failed to carry his burden of proving that his trial counsel performed deficiently with respect to Turnbull's election to proceed with a bench trial, rather than a jury trial.[24]

(d) Finally, Turnbull complains that, during the sentencing phase of his trial, his lawyer did not object to the admission of what the prosecutor offered as "the defendant's GCIC." Turnbull does not contend that the report was inaccurate, but

---

[24] See *Watson v. State*, 274 Ga. 689, 690-691 (2) (558 SE2d 704) (2002) (where trial court asked on the record whether defendant wished to waive his right to a jury trial and proceed with a bench trial, trial court received defendant's oral assurance that he wished to waive trial by jury and proceed with a bench trial, and defendant's attorney informed trial court that he had discussed with defendant whether to proceed with a bench trial versus a jury trial, the record authorized a finding that defendant personally, knowingly, voluntarily, and intelligently waived his right to a jury trial); see also *Brown v. State*, 277 Ga. 573, 574 (2) (592 SE2d 666) (2004) (defendant's consent to waive jury trial "need not be in a particular, ritualistic form"; trial court need only conduct an inquiry of the accused on the record so as to ensure that the waiver is knowing, voluntary and intelligent).

points out that it was not certified. Further, the sentencing hearing transcript reveals that the state presented no testimony concerning the origin of the report.[25]

But even assuming that trial counsel erred by not objecting, Turnbull was required also to meet the prejudice prong of the *Strickland* test. At the motion for new trial hearing, the judge noted that the report at issue showed a prior conviction of family violence, but the judge remarked further that the conviction was from the same court, that she had presided over the 2009 case, and that the law allowed for judicial notice thereof.[26] The judge noted also that the report showed other pending or dismissed charges, but remarked that, in making her decisions, she was capable of not

---

[25] See OCGA § 24-3-17 (b) ("Any court may receive and use as evidence in any case information otherwise admissible from the records of the Department of Public Safety or the Department of Driver Services obtained from any terminal lawfully connected to the Georgia Crime Information Center without the need for additional certification of those records."); *Thomas v. State*, 196 Ga. App. 88, 91 (4) (395 SE2d 615) (1990) (OCGA § 24-3-17 provides for self-authentication where the document sought to be admitted was obtained from a computer terminal lawfully connected to the Georgia Crime Information Center); see further *Rogers v. State*, 282 Ga. 659, 666 (7) (d) (653 SE2d 31) (2007) (acknowledging OCGA § 24-3-17 as a statutorily-recognized hearsay exception).

[26] See *Schaff v. State*, 275 Ga. App. 642, 645 (3) (621 SE2d 595) (2005) (rejecting argument that defendant's right to due process of law was violated when the trial court took into consideration his prior conviction even though the state did not present a certified copy of that conviction, where prior conviction occurred in the same court in which the defendant was being tried and sentenced and trial court could thus take judicial notice thereof).

using evidence that should not have been introduced.[27] The judge then pointedly asked Turnbull's post-conviction lawyer to explain how the prejudice prong of *Strickland* was met. The lawyer answered, "I would submit that it's still error for the defense to not object to a hearsay document coming in." The trial court was authorized to determine that the prejudice prong had not been satisfied.[28] Indeed, Turnbull has made no argument to this court that he demonstrated the requisite prejudice under *Strickland*.

Moreover, the record shows that the punishment imposed upon Turnbull was statutorily authorized,[29] and "unless affirmative evidence shows otherwise, the trial

---

[27] See *Horne v. State*, 286 Ga. App. 712, 715 (3) (649 SE2d 889) (2007) (even if GCIC report admitted at sentencing hearing constituted improper evidence, "there is a presumption, in the absence of a strong showing to the contrary, that the trial judge sifts the wheat from the chaff, ignoring illegal evidence and considering only legal evidence") (citation, footnote, and emphasis omitted).

[28] See *Perkins v. Hall*, 288 Ga. 810, 811 (II) (708 SE2d 335) (2011) (where defendant claimed he received ineffective assistance during sentencing phase, defendant must show that trial counsel rendered constitutionally deficient performance and that actual prejudice of constitutional proportions resulted; to satisfy prejudice prong, defendant must show that there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different); see also *Horne*, supra; *Schaff*, supra.

[29] OCGA §§ 16-11-39.1 (b), 17-10-3 (a) (1); *Williams v. State*, 296 Ga. App. 707, 708-709 (2) (675 SE2d 596) (2009).

18

court is presumed to have exercised its discretion in imposing sentence. This is not a case in which the trial court stated that it believed its discretion was constrained."[30]

"Therefore, in the absence of affirmative evidence showing that the trial court believed it had no discretion, we discern no prejudice caused by trial counsel's conduct."[31]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[30] *Reese v. State*, 313 Ga. App. 746, 750 (3) (722 SE2d 441) (2012) (punctuation and footnotes omitted).

[31] Id. (footnote omitted); see *Taylor v. State*, 282 Ga. App. 469, 472 (3) (c) (638 SE2d 869) (2006) (holding that the defendant failed to establish prejudice because the record did not show that trial court's sentencing rationale was improper).