A07A0443. BRAGG v. THE STATE.
(646 SE2d 508)

RUFFIN, Judge.

Following a bench trial, the court found Joseph Bragg guilty of aggravated stalking, aggravated assault, and kidnapping.[1] In two enumerations of error, Bragg challenges the sufficiency of the evidence supporting his conviction. For reasons that follow, we agree that the evidence was insufficient to support Bragg's conviction for aggravated stalking. However, as ample evidence supported his convictions for aggravated assault and kidnapping, we affirm as to those convictions.

On appeal from a criminal conviction, Bragg no longer enjoys a presumption of innocence, and we view the evidence in a light most

---

[1] The court also found Bragg guilty of battery under the Family Violence Act and false imprisonment, but it appears the court subsequently entered an order of nolle prosequi with respect to those two counts.

favorable to the verdict.[2] We neither weigh the evidence nor determine witness credibility, but merely determine whether the evidence was sufficient for a rational trier of fact to find Bragg guilty of the charged offenses beyond a reasonable doubt.[3]

Viewed in this manner, the evidence shows that Bragg was married to the victim. Approximately 20 days after the wedding, Bragg accused his wife of "looking" at another man and flew into a jealous rage. Over the next 18 hours, Bragg held his wife hostage, beat her with a metal bat, and threatened her with a gun. Bragg pleaded guilty to aggravated assault and family violence battery as a result of this incident. He was sentenced to probation, with a portion of the sentence to be served at a probation detention center. As a condition of his probation, Bragg was to have no contact with the victim.

After his release, Bragg resumed a relationship with the victim in August 2005. According to the victim, the two of them "were using drugs together." In September, the victim attempted to end her relationship with Bragg in an effort to reestablish order in her life and to wean herself from drug use. The victim testified that Bragg continually tried to contact her and would leave angry messages on her answering machine. In the beginning of October 2005, the victim saw Bragg, and they used drugs together. The next day, the victim failed a drug test and entered into a detoxification program. Upon completing the program a week later, the victim began attending AA meetings.

On October 11, 2005, the victim met with a friend she had alienated by her drug use. In a show of support, the friend agreed to attend an AA meeting with the victim and to treat her to dinner afterward. During dinner, the victim borrowed her friend's phone to call Bragg "to tell him that [she] ... did not ever want to be around him again and never wanted to be around any drugs again." The victim suggested that she and Bragg meet so the two could talk, and they met later that evening in a parking lot near Highway 67 in Bulloch County. According to the victim, she told Bragg that "this no longer can be between us[,]" and that Bragg became "very, very mad." Bragg then grabbed the victim by her hair and dragged her, screaming, into his car. Bragg struck the victim and ordered her to stop screaming. He told the victim, "if I'm going back to jail, I'm going back for a good reason." Bragg accused the victim of infidelity and struck her when she denied it. The victim attempted to escape several times, but Bragg held her by her neck in a "headlock." Ultimately, Bragg drove

---

[2] See *Miller v. State*, 273 Ga. App. 171, 172 (1) (614 SE2d 796) (2005).
[3] See id.

to a dirt road near his house where he continued interrogating and striking the victim. The victim testified that the encounter lasted for two to three hours at which point she went limp because she could not take another blow to her head. Bragg then dragged the victim from the car and began performing CPR and slapping the victim's face. When the victim opened her eyes, Bragg became enraged again and grabbed either a knife or a nail from the car, held it to the victim's head, and told her he would kill her. Bragg eventually took the victim into his house where one of his house mates saw the victim with a black eye and what appeared to be a broken nose. When Bragg passed out, the victim fled.

The victim went to her mother's house, and her mother called Bragg's probation officer, who told them to meet him at the sheriff's department. An investigator took pictures of the victim that showed bruising, blackened, swollen eyes, and bite marks. According to the victim, she continues to have problems with one of her eyes as a result of the beating. Based upon this and other evidence, the trial court found Bragg guilty of aggravated stalking, aggravated assault, and kidnapping.

1. On appeal, Bragg challenges his conviction for aggravated stalking, asserting that it cannot stand because the victim initiated the contact. OCGA § 16-5-91 (a) provides in pertinent part that

> [a] person commits the offense of aggravated stalking when such person, in violation of a . . . condition of probation, . . . follows, places under surveillance, or contacts another person at or about a place or places *without the consent* of the other person for the purpose of harassing and intimidating the other person.[4]

Thus, it is an element of the offense that the contact be without the victim's consent. Here, Bragg was charged with aggravated stalking based solely upon his contact with the victim "at and about [Highway] 67 and surrounding roads" on October 11, 2005. The victim testified that she agreed to meet Bragg on this date and had a friend follow her to the location. Thus, Bragg's contact with the victim was with her consent and thus does not come within the ambit of the aggravated stalking statute.[5]

---

[4] (Emphasis supplied.)

[5] See OCGA § 16-5-91 (a). Had the State charged Bragg with stalking based upon his prior letters and phone calls to the victim, the evidence likely would have been sufficient to establish the offense of stalking notwithstanding the victim's subsequent consent to meet with Bragg. See *Revere v. State*, 277 Ga. App. 393, 394 (1) (a) (626 SE2d 585) (2006); *Maskivish v. State*, 276

2. In a separate claim of error, Bragg contends that his convictions for aggravated assault and kidnapping also should be reversed because the victim's testimony is unworthy of belief. However, it is the role of the factfinder — not the appellate court — to determine whether a witness is credible.[6] Moreover, the testimony of the victim alone is sufficient to support a finding of guilt.[7] Under the circumstances of this case, the evidence was more than sufficient to sustain the trial court's finding of guilt with respect to the aggravated assault and kidnapping charges.[8]

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MAY 16, 2007.

*Robert S. Lanier, Jr.*, for appellant.
*Richard A. Mallard, District Attorney, W. Scott Brannen, Assistant District Attorney*, for appellee.

Ga. App. 701, 702 (1) (a) (624 SE2d 160) (2005) (sending letters constitutes sufficient contact to sustain a conviction for aggravated stalking).

[6] See *Clark v. State*, 282 Ga. App. 248, 250 (1) (b) (638 SE2d 397) (2006).

[7] See *Sims v. State*, 275 Ga. App. 836, 838 (1) (621 SE2d 869) (2005).

[8] See *Clark*, supra at 250-251 (1) (c).