**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 8, 2013**

# In the Court of Appeals of Georgia

A12A2491. SEIBERT v. THE STATE.

McFADDEN, Judge.

Steven Seibert appeals his conviction of aggravated stalking. He argues that the evidence does not support the conviction. We agree and therefore reverse.

On appeal from a criminal conviction,

the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(Citation omitted.) *Cordy v. State*, 315 Ga. App. 849 (1) (729 SE2d 13) (2012).

So viewed, the record shows that Leslie Swords and Seibert were married for fourteen and one-half years before they divorced in 1998. In 1999, Swords was granted a permanent restraining order against Seibert because of his harassing behavior, which included repeated phone calls, unannounced visits, parking outside her house and watching the house, leaving items on the doorstep, and entering her house without permission. The restraining order prohibited Seibert from having any contact whatsoever with Swords. Nonetheless, Seibert continued to contact Swords, so she moved to another county without telling Seibert. Within a couple of months, he began contacting Swords at her new address. Eventually, Swords moved back to Gwinnett County, again not telling Seibert. He began contacting her. Swords contacted the district attorney's office, the police and the sheriff's office. In 2007, the court sentenced Seibert for certain crimes, and as part of his sentence, Seibert again was ordered to have no contact whatsoever, either directly or indirectly, with Swords, their children, and Swords' family.

In 2010, Seibert filed a pro se, civil action against Swords. She took the complaint to the Gwinnett County District Attorney's office. John Warr, an assistant district attorney, filed a motion to intervene in the civil action, not as Swords'

attorney, but as a representative of the state, which, Warr believed, had an interest in the civil action.

In October 2010, Seibert sent Warr several documents, which Warr received at his office. Included in the documents was a letter from Seibert to Swords in care of Warr. Seibert also included a letter to Warr, asking him to deliver the letter to Swords "in accordance with the law, via fax or otherwise, as her representative counsel." Warr reported his receipt of the letter to the chief assistant district attorney because he thought it was a violation of prior court orders. The state presented no evidence that Swords ever received the letter.

The state indicted Seibert for committing two counts of aggravated stalking by contacting Swords "by mailing a letter to a third party with a specific request to deliver said letter" to her for the purpose of harassing and intimidating her, in violation of the permanent restraining order and a probation condition in the 2007 sentence. The jury returned guilty verdicts on both counts, and the court entered a judgment of conviction, merging the counts and sentencing Seibert to ten years in prison. After the court denied his motion for new trial, Seibert filed this appeal.

OCGA § 16-5-91 (a) provides that a person commits aggravated stalking when that person,

in violation of a . . . permanent restraining order . . . or . . . condition of probation . . . contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

Although the aggravated stalking statute does not define the terms "contact" or "place or places," the simple stalking statute does. See OCGA § 16-5-90 (a) (1). The definitions contained in the simple stalking statute are applicable here, because the legislature has made clear that the simple stalking statute defines terms "[f]or purposes of [the entire] article [on stalking in the Georgia Code]." OCGA § 16-5-90 (a) (1). See *State v. Burke*, 287 Ga. 377, 378 (695 SE2d 649) (2010).

OCGA § 16-5-90 (a) (1) defines the term "contact" to mean "any communication including without being limited to communication . . . by mail. . . ." It defines the terms "place or places" to "include any public or private property occupied by the victim other than the residence of the defendant." Id. The statute also provides that "the place or places that contact . . . is deemed to occur shall be the place or places where such communication is received."

Based on the plain terms of the stalking statutes, aggravated stalking can be committed when a person, in violation of a permanent restraining order or a condition of probation, contacts the victim by mail at any public or private property occupied

4

by the victim. "To 'contact' is readily understood by people of ordinary intelligence as meaning to get in touch with; communicate with." (Citation and punctuation omitted.) *Johnson v. State*, 264 Ga. 590 (1) (449 SE2d 94) (1994). The state presented no evidence that Seibert "got in touch with" or "communicated with" Swords; the state presented no evidence that she even was aware of the letter.

The state argues that contact through a third party can be a violation of the aggravated stalking statute. But in the cases it cites, actual contact was made with the victim, whether directly by the defendant or indirectly by the defendant through a third party. See *Louisyr v. State*, 307 Ga. App. 724 (706 SE2d 114) (2011) (in violation of protective order prohibiting defendant from having any contact with his wife or from coming within 500 feet of her residence, defendant went to the hotel where his wife and children were staying, went to their room, called his daughter's name, used a key to try to enter the room, was thwarted by the safety chain and his wife and daughter's pushing against the door, so reached his hand inside and attempted to remove it); *Davidson v. State*, 295 Ga. App. 702 (673 SE2d 91) (2009) (defendant convinced victim's friend to use the three-way feature of her telephone service to connect him with the victim, who spoke with defendant); *Holmes v. State*, 291 Ga. App. 196 (661 SE2d 603) (2008) (in addition to leaving mail for his wife at

5

his mother-in-law's house and having a fellow inmate send letters to his three-year-old daughter, defendant made numerous phone calls to his wife, sent her e-mails and followed her and her family in his car, in violation of order prohibiting contact with wife and family).

Here, however, the state failed to prove that there was actual contact with Swords, whether through a third party or otherwise. Indeed, the Georgia Supreme Court has held that an attempt to contact another person, precisely the conduct with which the state charged Seibert, is to *attempt* to stalk. *State v. Rooks*, 266 Ga. 528, 529 (2) (468 SE2d 354) (1996).

The state also failed to prove that Seibert's communication was made at a "public or private property occupied by the victim." Under the statutes, the contact was deemed to have occurred at the district attorney's office, where Warr received the letter; there was no evidence that Seibert contacted Swords at a place occupied by Swords, as the plain terms of the statutes require.

*Judgment reversed. Barnes, P. J., and McMillian, J., concur.*