**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 10, 2015**

# In the Court of Appeals of Georgia

A15A0903. JACKSON v. THE STATE.

RAY, Judge.

After a jury trial, Marvin Jackson, Jr. was convicted of one count each of aggravated stalking, family violence battery, and kidnapping, as well as two counts of influencing a witness.[1] Jackson appeals from his convictions and from the denial of his motion for a new trial, arguing that the evidence was insufficient to sustain several of his convictions and that the trial court erred in allowing the State to submit

---

[1] Jackson was indicted for three counts of family violence battery, two counts of aggravated stalking, two counts of false imprisonment, two counts of kidnapping and two counts of influencing a witness. The trial court granted Jackson's motion for a directed verdict as to one count of aggravated stalking. The jury acquitted Jackson of two counts of family violence battery, two counts of false imprisonment, and one count of kidnapping.

for consideration certain evidence in aggravation of punishment. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that Nikeesha Jackson (hereinafter, the "victim") was in a romantic relationship with Jackson.[3] In December 2012, the victim and her young son, J. C., moved into a home in Clayton County near J. C.'s paternal grandmother.

In April 2013, Jackson was released from a federal facility in Kentucky where he had been serving a sentence for drug-related charges. The victim drove to Kentucky to pick him up and dropped him off at a halfway house in Atlanta. While Jackson was at the halfway house, the victim provided Jackson with transportation and a place to stay during weekend leave.

By May 2013, Jackson began exhibiting violent behavior towards the victim. On one occasion, the victim called the police after Jackson beat her up, but she testified that she lied to the responding officers to protect Jackson from being arrested. The victim testified that, after that night, she avoided calling the police because she was fighting to regain custody of her other children and did not want to

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] The victim was not married to Jackson. Her maiden name was also Jackson.

document any violence in her household. On September 21, 2013, the day after Jackson was released from the halfway house, he came to live with the victim.

On September 22, 2013, Jackson and the victim attended a party in Henry County. The victim brought along her friends, Shermett Britten and Shakonica Crockett. Following an argument at the party, Jackson struck the victim. When Britten confronted Jackson, Jackson shoved her. Fearing that a fight was about to break out, the victim got in her car and drove way. Jackson then got into his car and followed the victim. Britten called 911, and she and Crockett headed towards the victim's house. When the victim arrived at her house, Jackson was already there. Britten and Crockett arrived just after the victim.

Davieon Norfus, the victim's 12-year-old neighbor, was walking up the street with some friends when he heard the victim screaming at Jackson to get out of her house. Through the window, Norfus saw Jackson hit the victim. Norfus and his friend went up to the open front door of the house and the friend told Jackson, "you're not supposed to hit a woman." Jackson told the boys to leave, but the victim asked them to stay and help her. The police then arrived and arrested Jackson. The victim and Britten then went to the store to purchase new locks for the house and replaced them that night.

On September 24, 2013, Jackson bonded out of jail and returned to the victim's house despite the terms of his pretrial bond that prohibited him from contacting her. When Jackson arrived at the house, the victim let him inside. The couple began arguing, and Jackson began to attack the victim by punching her, biting her, and pulling on her hair. The victim ran to J. C.'s room, woke him up, and yelled at him to go run to his grandmother's house for help. J. C., who was six years old at the time of trial, testified that he managed to run downstairs and outside the house when Jackson stopped him, picked him up, and brought him back inside the house. J. C. saw Jackson hit his mother in the face and testified that his mother's mouth was bleeding.

The next morning, the victim did not send J. C. to school because she was afraid he would tell a teacher what had happened the previous night. Britten called the victim to check on her, and the victim informed her that Jackson was back in the house. Britten then sent the victim a text message asking whether she should call the police, and the victim responded "yes." Britten called 911 and asked for an officer to check on the victim. When the responding officers arrived and knocked on the front door, Jackson ordered the victim and J. C. to take the stairs on the back side of the

4

house to the garage and to hide in the car. The three sat inside the car for about an hour. After receiving no response, the officer left.

The next day, the victim sent J. C. to school and drove Jackson to report to his parole officer. Jackson showed up at the victim's house later to collect clothes the victim had purchased for him, and he called the police when he learned that she had returned them to the store. The victim then took out a warrant against Jackson, and he was arrested.

Jackson placed a collect call to his sister from jail, who then put the call through to victim. In that phone call, Jackson demanded that the victim drop the charges and stated that she could just "plead the Fifth" if the authorities pressured her.

1. Jackson first argues that the evidence was insufficient to support his convictions for aggravated stalking, kidnapping, and two counts of influencing a witness.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the [defendant] is no longer entitled to the presumption of innocence." (Citation omitted.) *Newsome v. State*, 324 Ga. App. 665, 665 (751 SE2d 474) (2013). In determining the sufficiency of the evidence, we neither weigh the evidence nor assess the credibility of the witnesses, but determine only whether

the evidence authorized the jury to find the appellant guilty of the crime charged beyond a reasonable doubt. *Byrd v. State*, 325 Ga. App. 24, 24 (752 SE2d 84) (2013).

(a) *Aggravated Stalking.* The indictment charged Jackson with aggravated stalking for his act of contacting the victim "at her home in violation of a condition of pretrial release and without her consent for the purpose of harassing and intimidating her." Jackson does not challenge a finding that he arrived at the victim's house with the intent of threatening or harassing the victim, but rather, he contends that the evidence does not support a finding that he contacted the victim without her consent.

Under OCGA § 16-5-91 (a), "[a] person commits the offense of aggravated stalking when such person, in violation of a . . . condition of pretrial release . . . in effect prohibiting the behavior in this subsection, follows, places, under surveillance, or contacts another person at or about a place or places *without the consent of the other person* for the purpose of harassing and intimidating the other person." (Emphasis supplied.) "Thus, it is an element of the offense that the contact be without the victim's consent." *Bragg v. State*, 285 Ga. App. 408, 410 (1) (646 SE2d 508) (2007).

Here, Jackson had been arrested for hitting the victim and failing to leave her home when asked. After he bonded out of jail, Jackson went to her house in violation of the terms of his conditions of pretrial release. The victim allowed him to come inside, and she provided no testimony that she ever asked him to leave the house. However, there was also no evidence that the victim invited Jackson to her home or consented to his presence prior to his arrival at her door. The jury could infer that the victim did not consent to Jackson coming back to her house by the fact that she had him arrested the evening prior and immediately changed the locks once he was out of the house.[4] The jury could also infer by his conduct both before and after he returned to the house that Jackson came to the victim's house for the purpose of threatening or harassing her. See *Crapps v. State*, 329 Ga. App. 820 (766 SE2d 178) (2014) ("To prove that an act was done for the purpose of harassing and intimidating the victim, . . . the State must show that the act was part of a pattern of harassing and intimidating behavior") (citation and punctuation omitted).

Although the State at trial argued that the consent element of aggravated stalking was met when the victim impliedly revoked her consent after the abuse

---

[4] The victim testified that she was not aware that Jackson had even been released from jail until he showed up at her home.

7

began, we find that the crime of aggravated stalking was completed when Jackson arrived at the door of the victim's house, in violation of the conditions of his pretrial release, without her having invited him to do so. Compare *Bragg,* supra (insufficient evidence to support aggravated stalking conviction when victim initiated contact with defendant to suggest that they meet, brought a friend along with her to the meeting, and never withdrew consent). See also, *Littleton v. State*, 225 Ga. App. 900, 902-903 (4) (485 SE2d 230) (1997) (sufficient evidence supported aggravated stalking conviction even though victim had previously allowed the defendant into her home after entry of protective order).

(b) *Kidnapping.* Jackson next argues that the evidence was insufficient to support his conviction for kidnapping the child because the State failed to carry its burden of proving that Jackson forcibly "impose[d] his will over [J. C.] to move or hold him in the garage." We disagree.

The indictment charged Jackson with kidnapping for his act of "abduct[ing] [J. C.] without lawful authority . . . and [holding] him against his will when the accused forced him into the garage for the purpose of (1) concealing or isolating him, (2) to lessen the risk of detection, and (3) to avoid apprehension[.]"

OCGA § 16-5-40 (a) provides that "[a] person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." And "[f]or the offense of kidnapping to occur, slight movement shall be sufficient[.]" OCGA § 16-5-40 (b).

Here, the victim testified that the morning after Jackson had beaten her, she asked Britten, via text message, to call 911 for her. The victim stated that she and J. C. were not free to leave the house once Jackson arrived because "it was understood" that Jackson required them to stay in the house. She further testified that she, J. C., and Jackson were upstairs in the house when they heard the police arrive, and that Jackson "told [them] to go" downstairs to the garage and to sit in the parked car. The victim stated that she complied because she was "very afraid" during this time and that she felt like she had to "do whatever he say[s]. Don't ask no questions." She stated that Jackson informed her that she would "be done with" if he got "locked up" over the incident. J. C. confirmed his mother's testimony, explaining that once the police arrived, Jackson told him and his mother to sit in the car in the garage.

Although Jackson did not physically force J. C. down the stairs and into the garage, such physical force is not a necessary element of kidnapping. See, e. g.,

9

*Fredrick v. State*, 181 Ga. App. 600, 602 (1) (353 SE2d 41) (1987) ("whether the abduction or taking of the person was forcible or by enticement is immaterial, so long as the victim is unlawfully held 'against his will'"). Here, there was evidence supporting a finding that neither J. C. nor the victim went to the garage of their own free will, but rather were forced to do so by use of Jackson's intimidation, threats and prior physical violence against the victim. Further, "testimony by the victim of a kidnapping concerning whether consent was given or withheld is not essential since other evidence can be utilized to establish the victim was abducted and held against [his] will." (Citation and punctuation omitted.) *Parson v. State*, 245 Ga. App. 902, 904 (539 SE2d 234) (2000). Some evidence was presented that Jackson made J. C. move down the stairs into the garage against his will. J. C. had witnessed Jackson hit his mother so hard the day before that she bled from her mouth, his mother testified that she was afraid of Jackson, J. C. had been ordered by Jackson to go to the garage, and Jackson had threatened J. C.'s mother if he was arrested. Accordingly, we conclude that a rational trier of fact was authorized under the standard of *Jackson*, supra, to conclude beyond a reasonable doubt that Jackson kidnapped J. C. against his will.

(c) *Influencing a witness*. Although Jackson purports to challenge the sufficiency of the evidence supporting his convictions for influencing a witness, he limits his argument on appeal to the sufficient of the indictment. Specifically, he argues that the indictment was defective because it failed to place him on notice of the way in which he intimidated the victim and failed to allege facts that would constitute the crime.. However, Jackson did not file a general or a special demurrer challenging these counts of his indictment before the trial court. See *Coleman v. State*, 318 Ga. App. 478, 479 (1) (735 SE2d 788) (2012).

Although a defendant has "a right to be tried upon an indictment which is perfect in form and substance . . . this right can, under certain circumstances, be waived if a defendant fails to timely challenge the indictment." (Citations omitted.) *McKay v. State*, 234 Ga. App. 556, 558 (2) (507 SE2d 484) (1998). To challenge the sufficiency of an indictment, an accused can file a special or a general demurrer. "A general demurrer challenges the very validity of the indictment and may be raised anytime; the special objects merely to its form or seeks more information and must be raised before pleading to the indictment." (Citations and punctuation omitted.) Id. A defendant waives a special demurrer if he does not raise it before pleading to the merits of the indictment. Id. at 59 (2). However, "[b]ecause a general demurrer attacks

11

the legality of an indictment, it may be raised any time during the trial and may even be raised after the verdict by a motion in arrest of judgment[.]" (Footnote omitted.) *Coleman*, supra.

The record is clear in this case that Jackson filed neither a special nor a general demurrer. This Court has previously held that "a [m]otion for new trial is not the proper method to attack the sufficiency of an indictment and does not provide a basis for this Court to review the indictment." (Citations omitted.) See *McKay,* supra at 559-560 (2). Because Jackson did not raise an objection to the indictment in any manner before or during trial and did not move to arrest the judgment after his conviction, it can be reviewed on appeal only through a habeas corpus proceeding. Id. See also *Zabain v. State*, 315 Ga. App. 749, 753-754 (3) (728 SE2d 273) (2012). Accordingly, his claim is not properly before us.

2. Jackson next argues that the trial court erred when it allowed the State to present evidence in aggravation of punishment at the sentencing hearing without providing proper notice under OCGA § 17-16-4 (a) (5). We find no error.

Following Jackson's conviction, the trial court conducted a sentencing hearing. In aggravation of punishment, the State offered a certified copy of Jackson's prior federal drug conviction and sought the maximum sentence under the recidivist statute,

12

OCGA § 17-10-7. Jackson's counsel objected to the introduction of this evidence, arguing that he had not been timely notified of the State's intent to seek recidivist punishment. The State informed the trial court that a timely notice had been served on Jackson's counsel and filed in the record before the trial began, but Jackson's counsel denied having received it. After hearing from both parties, the trial court found that Jackson had been provided with prior notice of the intent to introduce evidence in aggravation of punishment prior to trial. The trial court then admitted the certified copy of Jackson's prior conviction, but did not sentence him as a recidivist under OCGA § 17-10-7 (a).

OCGA § 17-16-4 (a) (5) provides that "[t]he prosecuting attorney shall, no later than ten days prior to trial, or at such time as the court orders but in no event later than the beginning of the trial, provide the defendant with notice of any evidence in aggravation of punishment that the state intends to introduce at sentencing." Jackson contends that "[t]here is nothing in the record which would indicate that the State noticed the defendant of its intention to use prior convictions to enhance the punishment before the written notice at trial." However, this assertion is unfounded. The record contains a filed-stamped document indicating that the State filed into the record a copy of Jackson's prior convictions, its intent to use them in aggravation of

13

sentencing, and that it mailed the same to Jackson's counsel more than 10 days before trial. Further, the State informed the trial court that it hand-delivered the document to Jackson's counsel as well. We find no error in the trial court's decision to admit the certified copy of Jackson's prior convictions. See *Thomas v. State*, 324 Ga. App. 898, 900 (752 SE2d 67) (2013) (trial court did not abuse its discretion in finding that the State provided defense counsel with adequate notice of its intent to introduce prior convictions in aggravation of punishment when "substantial evidence" was presented from which the trial court could conclude that defense counsel received notice of such intent).

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*