**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 16, 2017**

# In the Court of Appeals of Georgia

A16A2084. ORDELT v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Matthew Ordelt was convicted of one count of aggravated stalking (OCGA § 16-5-91). Ordelt filed a motion for new trial, which the trial court denied. On appeal, Ordelt contends that there was insufficient evidence to sustain his conviction. After a thorough review of the record, we discern no error and affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citation omitted.) *Scarborough v. State*, 317 Ga. App. 523 (731 SE2d 396) (2012).

So viewed, the evidence shows that Ordelt and the victim met in the summer of 2012 and they moved in together about a year later. The apartment and utilities were in the victim's name, and she was solely responsible for payment of rent and utilities.

Less than a month later, the victim found Ordelt unconscious on the porch of their home from a drug overdose. Ordelt was taken to the hospital, where he remained for approximately a month due to kidney failure. Ordelt made the victim feel very guilty and blamed his health issues on her failure to call 911 sooner. As a result of his hospitalization, Ordelt lost his job, and the victim had to work six days a week to try to support both herself and Ordelt. Ordelt and the victim began to drink heavily, and Ordelt resumed his drug use. Ordelt also stole money from the victim to sustain his habits.

In October of 2013 Ordelt punched the victim in the face for turning on the light to look for something while he was sleeping. After punching the victim in the face, Ordelt laughed and crawled back into bed. From that time on, Ordelt was frequently violent towards the victim, including throwing the victim against the wall, holding her prisoner in her own home, and trying to choke her. On one occasion, Ordelt even tried to scratch out the victim's left eye, leaving a scar under her eye. On

that occasion the victim had to barricade herself in the bathroom and call her co-workers to come help her. Ordelt also threatened to kill the victim if she went to the police, so she let the abuse continue.

In December of 2013, Ordelt left the apartment he shared with the victim and did not return for the next two days. The victim eventually found Ordelt at a hospital emergency room with stitches from the middle of his forehead down to the tip of his nose due to a cut he sustained while he was high on methamphetimine and was running from the police. The victim decided she had enough and she unsuccessfully attempted to evict Ordelt. In January 2014, after Ordelt learned of the victim's attempt to evict him, he told her that if she tried to evict him again, he would make her life hell. From that time on, Ordelt's violence towards the victim increased.

On February 12, 2014, Ordelt coerced the victim into giving him money to go out to eat even though she had past due bills. When Ordelt returned, he and the victim argued. The victim tried to walk out of the kitchen, but Ordelt shoved her back against the wall and she fell. The victim again tried to walk out and Ordelt pushed her again, twice as hard. The third time the victim tried to walk out, Ordelt kicked her legs out from under her. The victim then tried to run past him, but Ordelt tackled her

3

onto the bed. The victim kicked and screamed and asked for help. Ordelt finally got off of the victim after she bit him, and then the victim locked herself in the bathroom.

The victim's neighbors called the police, however, Ordelt ran from the scene when officers arrived. The officers met with the victim, who initially told them that she had been watching a movie. The victim, however, had fresh marks on her cheeks, redness on her chin, as well as fresh bruising and abrasions on her arms. The officers noted fresh bruising and abrasions on the victim, and she eventually told them that she and Ordelt had a verbal dispute, which escalated to physical violence. The officers obtained a warrant against Ordelt for battery family violence, and they told the victim to call if Ordelt returned to the apartment. The victim called police when Ordelt returned a few hours later and tried to gain entry to the apartment. By the time officers arrived, Ordelt had fled. Ordelt was charged with battery against the victim, but eventually pled guilty to disorderly conduct.

After he was released from jail for his attack on the victim, Ordelt appeared at the victim's job. That same day, the victim petitioned for and obtained an ex parte

Family Violence Protective Order ("Protective Order"),[1] which prohibited Ordelt from:

> doing, or attempting to do, or threatening to do, any act of injury, maltreating, molesting, following, harassing, harming or abusing the [victim] in any manner. [Ordelt] is not to interfere with [victim's] travel, transportation, or communication. [Ordelt] shall not follow, place under surveillance, or contact the [victim] at any place of the [victim] for the purpose of harassing and intimidating the [victim].

The victim was awarded sole possession of the apartment she once shared with Ordelt, and he was ordered to stay away from the apartment and her workplace.[2] Ordelt was further ordered not to have "any contact, direct, indirect, or through another person with [the victim], by telephone, pager, fax, e-mail or any other means of communication except as specified in [the Protective Order]." The Protective Order also contained a section concerning removal of Ordelt's property from the apartment, however, nothing is filled in the blanks of that section.

---

[1] The Protective Order contains a misnomer in the victim's name, however, Ordelt has never raised this misnomer as a challenge to his conviction.

[2] The Protective Order has a paragraph which was intended to be a more specific restriction as to how far away from the victim Ordelt was required to stay, however, that paragraph contains a typographical error and, thus, fails to designate a distance.

The Cobb County Sheriff served the Protective Order on Ordelt the same day that it was issued. Ordelt told the sheriff that he would call the following day to schedule a time for the supervised removal of his belongings from the apartment.[3] The Sheriff's Department arranged with the victim to have Ordelt pick up his belongings on July 7, 2014, however, Ordelt never responded to confirm this time.

After entry and service of the Protective Order, and despite the provision prohibiting him from indirectly contacting the victim, Ordelt sent Facebook and text messages to the victim's mother and best friend professing his love for the victim. He also had a mutual friend contact the victim about having the friend pick up Ordelt's property. Although the friend never showed up, the victim agreed to this arrangement.

Instead of scheduling supervision through the Sheriff's Department, Ordelt called the Marietta Police Department to request that an officer immediately meet him at the victim's apartment for purposes of obtaining his belongings. When the first officer arrived on the scene, she talked to Ordelt outside the apartment, and proceeded to the victim's unit. The victim showed the first officer the Protective Order and

---

[3] For personnel reasons, this Sheriff's Department typically only will provide supervision for property removal during Monday through Friday. If an individual is interested in scheduling a time on the weekend, the Sheriff's Department will instruct him or her to call the local police to see if the local police are willing to provide the necessary supervision.

explained that she wanted Ordelt to leave immediately. The first officer then spoke to Ordelt again, explained to him that he needed to arrange a time through the Sheriff's Department, not the Marietta Police Department, and told him he needed to leave. Ordelt indicated he would schedule a time through the Sheriff's Department and left without incident.

On July 13, 2014, Ordelt again called the Marietta Police Department and asked them to meet him immediately at the victim's apartment to retrieve his property. Upon hearing this dispatch, the first officer radioed the second officer, who was en route to the call, and advised that Ordelt knew the proper procedure to follow and he had been told not to return. Dispatch attempted to call Ordelt back to tell him to leave, however he did not answer his phone.[4]

When the second officer arrived, she did not immediately locate Ordelt, so she drove around looking for him, then parked her patrol car and headed to the victim's apartment. While the second officer was talking to victim, Ordelt walked up the stairs and came within approximately 150 feet of the victim and the second officer. The

---

[4] Ordelt told the second officer that he did not have a phone, however, his friend saw him with his phone when she dropped him off that day and a phone was on his person when he was arrested.

second officer testified that the victim "looked very afraid and told me, that's him right there. And she started shaking."

The second officer told the victim to close the door, and she took Ordelt outside. Ordelt stated that he saw the empty patrol car and assumed that the officer was waiting inside the victim's apartment for him. The second officer told Ordelt that he knew he needed to go through the Sheriff's Department. Ordelt responded that he was aware that he needed to schedule through the Sheriff's Department, "but [that] they only work Monday through Friday and that didn't work for him."[5] The second officer then arrested Ordelt for violating the Protective Order. Even after his arrest, the victim remained deeply concerned about when Ordelt would be released because she feared he would come after her.[6]

Ordelt was subsequently indicted for and convicted of aggravated stalking for violating the Protective Order by unlawfully contacting the victim at her apartment without her consent for the purpose of harassing and intimidating her. On appeal,

---

[5] Ordelt had no car and was staying with a friend who was only able to bring him to the victim's apartment on the weekends.

[6] After Ordelt's arrest for violating the Protective Order, the Superior Court of Cobb County held a final hearing on the victim's petition and entered a Family Violence Twelve Month Protective Order. There is no allegation on appeal that Ordelt has violated this order.

Ordelt contends that the evidence was insufficient to support his conviction.[7] After a thorough review of the record, we disagree.

When a defendant alleges that the evidence is insufficient to support his conviction, we review the evidence in the light most favorable to the jury's verdict to determine if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

> A person commits the offense of aggravated stalking when such person, in violation of a . . . temporary protective order . . . contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

OCGA § 16-5-91 (a).[8]

This Court looks to the definitions contained in the simple stalking statute to analyze the elements of the aggravated stalking statute. *Seibert v. State*, 321 Ga. App. 243, 244 (739 SE2d 91) (2013) ("[t]he definitions contained in the simple stalking statute are applicable here, because the legislature has made clear that the simple stalking statute defines terms for the purposes of the entire article on stalking in the

---

[7] Ordelt does this through several enumerations which we address collectively.

[8] Ordelt does not argue on appeal that he had the victim's consent to appear at her apartment.

9

Georgia Code.") (citation and punctuation omitted) (citing *State v. Burke*, 287 Ga. 377, 378 (695 SE2d 649) (2010) and OCGA § 16-5-90 (a)(1)).

*a. Contact*

The statute defines "contact" as: "any communication including without being limited to communication in person, by telephone, by mail, by broadcast, by computer, by computer network, or by any other electronic device." OCGA § 16-5-90 (a) (1). We find the evidence sufficient to establish that Ordelt contacted the victim in person when he arrived unannounced at her apartment without coordinating with the Sheriff's Department after he was explicitly informed by the Marietta Police Department that they would not assist him in retrieving his property. Even though Ordelt was not able to speak to the victim directly before the second officer stopped him, Ordelt's ambush appearance at the victim's apartment under these circumstances is sufficient evidence of in person "contact" under the aggravated stalking statute. See *Jackson v. State*, 334 Ga. App. 368, 371 (1) (a) (779 SE2d 427) (2015) (the crime of aggravated stalking was completed when the defendant arrived uninvited at the door of the victim's house in violation of the conditions of his pretrial release).

Moreover, Ordelt's argument that he did not contact the victim because they did not exchange words imposes an overly narrow definition of "contact." Under Ordelt's interpretation of the statute, a stalker could terrorize his victim with impunity so long as he remained silent upon showing up at her residence. We will not interpret the aggravated stalking statute this way as it would lead to a clearly absurd result. See *State v. Mussman*, 289 Ga. 586, 589 (1) (713 SE2d 822) (2011) (we do not interpret statutes in ways which lead to absurd results).[9]

*b. Harassing and Intimidating*

Next we must determine whether Ordelt acted with the purpose of harassing and intimidating the victim. "Harassing and intimidating" is defined as,

> a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

---

[9] Contrary to Ordelt's argument, the present case is distinguishable from *Seibert*, supra, 321 Ga. App. at 244-245, because, in that case, there was no evidence that the victim received the letter which purportedly violated the protective order's prohibition on contact. Here, there is no question that the victim was aware of Ordelt's contact because she was the one who fearfully identified Ordelt to the second officer.

OCGA § 16-5-90 (a) (1).

"Even a single violation of a protective order may violate [the aggravated stalking statute] if that violation is part of a pattern of harassing and intimidating behavior." (Citation and punctuation omitted.) *Brooks v. State*, 313 Ga. App. 789, 792 (1) (723 SE2d 29) (2012).

> In considering whether evidence shows [a pattern of harassing and intimidating behavior], the jury can consider a number of factors, including the prior history between the parties, the defendant's surreptitious conduct, as well as his overtly confrontational acts [ ] and any attempts by the defendant to contact, communicate with, or control the victim indirectly.

(Citations and punctuation omitted.) *Slaughter v. State*, 327 Ga. App. 593, 596 (760 SE2d 609) (2014). Moreover, it is unnecessary for a defendant's behavior to be overtly hostile to constitute harassment and intimidation. Id.

Ordelt argues that his behavior cannot be considered harassing and intimidating because he went to the victim's apartment for the legitimate purpose of obtaining his property. The evidence was sufficient, however, for the jury to find that Ordelt's behavior was a continuation of his pattern of harassing and intimidating behavior towards the victim without a legitimate purpose, even though Ordelt called the police

12

before going to the victim's apartment, because he knew he had to schedule with the Sheriff's Department and deliberately failed to follow this procedure on two occasions. *Daker v. Williams*, 279 Ga. 782, 785 (621 SE2d 449) (2005) (two related instances of stalking behavior within the span of a single week was sufficient to establish aggravated stalking).

Further, Ordelt's intent in arriving unannounced at the victim's apartment was for the jury to determine. *Davidson v. State*, 295 Ga. App. 702, 705-06 (673 SE2d 91) (2009). The jury did not have to find Ordelt's purportedly legitimate reason for being present at the victim's apartment to be credible. See *Oliver v. State*, 325 Ga. App. 649, 653 (2) (753 SE2d 468) (2014) (trier of fact not required to believe defendant's testimony that she arrived at her mother's house in violation of protective order for purpose of seeking medical help).

Here, soon after he was served with the Protective Order, Ordelt twice appeared unannounced at the victim's apartment in express violation of the procedure he was told to follow to retrieve his possessions. In addition to considering the behavior that resulted in his arrest, the jury was authorized to consider the other evidence of Ordelt's prior behavior towards the victim, including the extensive evidence of Ordelt's prior physical and psychological abuse, which placed the victim in

13

reasonable fear of her safety; Ordelt's promise to make her life hell if she tried to evict him from the apartment; the evidence showing that Ordelt's abuse only stopped because he was incarcerated; the fact that Ordelt resumed his contact with the victim upon his release; and the evidence showing that, even after entry of the Protective Order, Ordelt attempted to indirectly contact the victim through her family and friends. Taking this evidence as a whole, the evidence was sufficient for the jury to conclude that Ordelt intended to harass and intimidate the victim by showing up unexpectedly and that he was not there for a legitimate purpose.

Accordingly, we find that the evidence was sufficient for the jury to find the essential elements of aggravated stalking beyond a reasonable doubt and thus, we affirm Ordelt's conviction.

*Judgment affirmed. McFadden, P.J.,concurs. McMillian, J., concurs in judgment only*.