**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 26, 2019**

# In the Court of Appeals of Georgia

A19A0508. SEIBERT v. ALEXANDER, JR. et al.

MILLER, Presiding Judge.

Proceeding pro se, Steven Jacob Seibert appeals from the trial court's order dismissing his mandamus petition and tort claims against Gwinnett County's Clerk of Superior Court and the "Gwinnett Co. Court Clerk's Office." Among other contentions, Seibert argues that the clerk, Richard T. Alexander, Jr., failed to properly record and report his discharge under the First Offender Act, OCGA § 42-8-60 et seq. Although we affirm the trial court's dismissal of Seibert's claims for damages, we determine that Seibert was entitled to have the record properly reflect his discharge under the First Offender Act. Therefore, we affirm in part and reverse in part.

"We review the grant of a summary judgment motion de novo, viewing the evidence and all reasonable inferences and conclusions drawn from it in the light

most favorable to the nonmovant." (Citation omitted.) *Teston v. SouthCore Constr., Inc.*, 336 Ga. App. 733, 734 (783 SE2d 921) (2016).

In September 1999, Seibert was indicted on one count of crossing of guard lines with weapons, and, after a bench trial, he received a first-offender sentence. The trial court sentenced him to serve 18 months in confinement, and the sentencing sheet provides, "[u]pon fulfillment of the terms of probation, or upon release of the defendant by the Court prior to the termination of the period thereof, the defendant shall stand discharged of said offense charged and shall be completely exonerated of guilt of said offense charged." Seibert successfully completed his first-offender sentence on May 9, 2001.

In February 2007, a jury found Seibert guilty of two counts of aggravated stalking (OCGA § 16-5-91), and one count of abandoning a dependent child (OCGA § 19-10-1). The trial court sentenced him to a 21-year term, consisting of 15 years' confinement, with the remainder of the sentence to be served on probation. Years later, Seibert was convicted of two counts of aggravated stalking (the "2011" criminal case), but this Court reversed these convictions. *Seibert v. State*, 321 Ga. App. 243 (739 SE2d 91) (2013). While incarcerated, Seibert filed a December 11, 2014 "motion to compel court clerk to properly record and report successful completion of First-

2

Offender status." In the motion, Seibert argued his belief that he was being repeatedly denied parole and work release on his 2007 sentence for aggravated stalking because the clerk had never recorded that he had successfully completed his first-offender sentence in May 2001.

Days after he filed this motion, the trial court issued an "order of discharge." The trial court found that Seibert completed his first-offender sentence without an adjudication of guilt, ordered that he receive a discharge that completely exonerated him of any criminal purpose, and directed that the Georgia Crime Information Center ("GCIC") be notified of the discharge in accordance with the First Offender Act. The order was filed on December 30, 2014. The clerk then made an entry "on the criminal docket and all other records of the [c]ourt," explaining the exoneration effect of the discharge. The clerk's entry was dated December 31, 2014, and the clerk reported the record of discharge to the GCIC. Gwinnett County Superior Court's electronic records pertaining to Seibert read as follows: "First Offender Completed on 12-22-14" and "1st Offender Discharge on 12-30-14."

In April 2015, Seibert filed a motion to amend the order of discharge in the underlying criminal case, requesting that the trial court's order be amended to show that his discharge date was actually May 9, 2001, when he completed his sentence.

3

He also asked that the clerk properly record and report the discharge date. The trial court denied the motion without explanation. Subsequently, Seibert moved to hold the district attorney, an assistant district attorney, and the clerk in contempt for failure to comply with the discharge order and for failure to properly record his first-offender discharge. The trial court denied the motion, concluding, inter alia, that the clerk's office appropriately identified Seibert's first-offender discharge in its records.

Seibert then brought the present mandamus and tort action. In March 2017, he filed a petition for mandamus and injunctive relief against the "Gwinnett Co. Court Clerk's Office" and Richard T. Alexander, Jr., the clerk of Gwinnett County Superior Court. Seibert argued that the clerk's office did not properly report the successful completion of his sentence and requested that the trial court compel the clerk and the clerk's office to record and report the discharge date as May 9, 2001. After the defendants moved for summary judgment, Seibert amended his complaint, adding negligence claims for compensatory and punitive damages and purporting to add subordinate employees in the trial court clerk's office and the former trial court clerk as defendants.

Following a hearing, the trial court granted the defendants' motion for summary judgment and dismissed Seibert's case in its entirety. The trial court first

4

dismissed the clerk's office as a party to the action, determining that it was not a legal entity capable of being sued. The trial court also found that the clerk, Alexander, had not been served, that Seibert had failed to act with reasonable diligence in effectuating service, and that dismissal was warranted under OCGA § 9-11-12 (b) (5).

Regarding Seibert's request to have the discharge date changed to May 9, 2001, the trial court found that the clerk correctly reported the date as December 30, 2014, the entry date of the order. The trial court reasoned that Seibert's discharge could not have been automatic when he completed his sentence because, under OCGA § 42-8-60 as it existed at the time, the trial court was first required to review Seibert's criminal record before granting a discharge and that review only occurred in 2014. The trial court further determined that Seibert's attempt to compel the clerk to undo an act, through mandamus, was contrary to law, and that collateral estoppel also presented a procedural bar to Seibert's "claims for relief." The trial court ruled that the clerk fully discharged his duty to record and report this Court's 2013 reversal of Seibert's aggravated stalking convictions, and that Seibert's tort claims were barred by the two-year statute of limitations under OCGA § 9-3-33. We granted Seibert's application for discretionary review, and this appeal followed.

5

1. First, the trial court correctly dismissed the case as against the clerk's office on the basis that it is not a legal entity subject to suit.

"[I]n every suit there must be a legal entity as the real plaintiff and the real defendant. This state recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." (Citation omitted.) *Georgia Insurers Insolvency Pool v. Elbert County*, 258 Ga. 317, 318 (1) (368 SE2d 500) (1988). And, as the trial court properly recognized, there is no legal provision that designates a trial court clerk's office as either a person or corporation capable of being sued. Although the Georgia Constitution recognizes the "clerk of the superior court" as an officer of the county, and designates each county as "a body corporate and politic," Ga. Const. of 1983, Art. IX, Sec. I, Par. I, III, neither the Georgia Code nor the Georgia Constitution establishes the clerk's office as a separate legal entity. Cf. *Taylor v. Fulton County*, No. 1:08-CV-3242-RLV (N.D. Ga. May 5, 2011) (noting that, "[i]n establishing the position of sheriff, the Georgia Code did not create the Office of the Sheriff, a legal entity capable of suing and being sued," and the fact that the sheriff is constitutionally elected did not mean that his office was a distinct legal entity); *Lawal v. Fowler*, 196 Fed. Appx. 765, 768 (11th Cir. 2006) (noting that

6

sheriff's departments and police departments are not usually considered legal entities subject to suit). See also *Cott Index Co. v. Jagneaux*, 685 So2d 656, 658 (La. Ct. App. 1996) ("The office of the clerk of court has no legal status and is simply the functional organization by and through which the clerk of court carries out his/her official duties. As with the office of the sheriff, . . . it [cannot] be a legal party to litigation. Instead, it is the clerk, as the office holder, . . . who is the party to litigation."). Thus, the trial court properly dismissed the clerk's office as a defendant to the lawsuit.

2. We agree with Seibert, however, that Alexander was properly served.

A trial court's finding of insufficient service of process is reviewed for an abuse of discretion. *Williams v. Patterson*, 306 Ga. App. 624, 626 (1) (703 SE2d 74) (2010). Simultaneously, "[w]hen a defendant in a lawsuit challenges the sufficiency of service, he bears the burden of showing improper service. And this is a heavy burden. Return of service constitutes a prima facie showing of personal service. The defendant is apprised by the return of what he must contest." (Footnotes omitted.) *Baughan v. Alaoui*, 240 Ga. App. 661, 663 (1) (524 SE2d 536) (1999). See OCGA § 9-11-4 (e) (7) (personal service shall be effected by delivering a copy of the summons and complaint to the defendant personally). "The return can only be set

7

aside upon evidence which is not only clear and convincing, but the strongest of which the nature of the case will admit." (Citations omitted.) *Earley v. Dyson*, 220 Ga. App. 586 (469 SE2d 841) (1996).

As the basis for its ruling that Alexander was not served, the trial court explained that the entry of service form showed that the deputy had checked the box for service upon a corporation and wrote that service had been effected on the clerk's *office*. However, this same form shows that the deputy left a copy of the summons and complaint with Alexander, as the individual "in charge of the office," and there is no dispute that Alexander received a copy of the summons and complaint. Indeed, as discussed above, Seibert could not have even brought an action against the office. In *Montgomery v. USS Agri-Chemical Division*, 155 Ga. App. 189, 191 (2) (270 SE2d 362) (1980), we explained that "[if] . . . the fact of service appears, and the officer's return is irregular or incomplete, it should not be treated as no evidence, but rather as furnishing defective proof of the fact of service." This is because "[i]t is the fact of service which confers jurisdiction, and not the return, and the latter may be amended to speak the truth." Id. at 192 (2). Insofar as Alexander was sued in his official capacity as the clerk and the entry of service form shows that a copy of the summons and complaint were left with him — as the individual "in charge of" the clerk's office

8

— the facts show that Alexander was served, and we reverse the trial court's ruling to the contrary.

3. Next, we determine that regardless of whether mandamus was an appropriate remedy in this case, Seibert was entitled to have the record properly reflect his discharge under the First Offender Act.

Preliminarily, we note that "sovereign immunity is no bar to petitions for writs of mandamus." *Lathrop v. Deal*, 301 Ga. 408, 434 (III) (C) (801 SE2d 867) (2017). "Mandamus will issue when the petitioner has a clear legal right to the relief sought and the public officer commits a gross abuse of discretion." (Footnote omitted.) *Henderson v. McVay*, 269 Ga. 7 (1) (494 SE2d 653) (1998). Accordingly, "mandamus will lie when the official act is purely ministerial . . . ." (Footnote omitted.) Id.

Beginning in 1982, the First Offender Act "provide[d] for confinement as a permissible condition of first-offender treatment." *O'Ree v. State*, 172 Ga. App. 51 (1) (322 SE2d 89) (1984). At the time of Seibert's plea in 1999, the First Offender Act provided,

> in the case of a defendant who has not been previously convicted of a felony, the court may, without entering a judgment of guilt and with the consent of the defendant:

9

(1) Defer further proceeding and place the defendant on probation as provided by law; or

(2) Sentence the defendant to a term of confinement as provided by law.

OCGA § 42-8-60 (a) (1986).

Upon fulfillment of the terms of probation, upon release by the court prior to the termination of the period thereof, *or upon release from confinement, the defendant shall be discharged without court adjudication of guilt* . . . and the defendant shall not be considered to have a criminal conviction.

(Emphasis supplied.) OCGA § 42-8-62 (a) (1990). See *O'Ree*, supra, 172 Ga. App. at 51 (1) (analyzing the statute as it existed at the time of the defendant's plea). OCGA § 42-8-62 (a) also mandated that the clerk "enter on the criminal docket and all other records of the court pertaining thereto" a notice of the defendant's discharge and the legal effect thereof. *State v. Mills*, 268 Ga. 873, 874 (495 SE2d 1) (1998) (citing OCGA § 42-8-62 (a)).

In 1998, the Supreme Court of Georgia reasoned that under the version of OCGA § 42-8-62 in effect at that time, a discharge from first-offender probation was automatic, as long as probation had been successfully completed. *Mills*, supra, 268 Ga. at 874. Pertaining to the duty of the clerk, the Supreme Court made clear that the

10

clerk's specified notice "*evidences the probationer's pre-existing automatic discharge and does not constitute the 'discharge' itself.*" (Emphasis supplied.) Id. And, the Supreme Court has plainly stated that the duty to memorialize the pre-existing fulfillment of a first-offender's sentence is a ministerial act. Id.

Applying these principles to this appeal, we conclude that Seibert's discharge was automatic upon his "release from confinement," as prescribed by OCGA § 42-8-62 (a) (1990), and not upon any formalized certification by the trial court. See *Mills*, supra, 268 Ga. at 874 ("[I]f a first-offender probationer is not 'discharged' pursuant to OCGA § 42-8-62, it is only because he did not successfully complete his term of probation, not because certification of that successful completion was not entered in the records of the trial court 'pursuant to Code Section 42-8-62.'").

We recognize that the prior version of the First Offender Act read as follows: "The court shall not sentence a defendant under the provisions of this article and, if sentenced under the provisions of this article, shall not discharge the defendant upon completion of the sentence unless the court has reviewed the defendant's criminal record as such is on file with the Georgia Crime Information Center." OCGA § 42-8-60 (c) (1986). The trial court, having considered this clause, found that it could not discharge Seibert until reviewing his criminal record. Again, however, both the plain

11

text of OCGA § 42-8-62 (a) and our precedent make clear that the trial court does not order a discharge under OCGA § 42-8-62 (a); it is an automatic occurrence.

Because the trial court had neither revoked Seibert's first-offender status nor entered an adjudication of guilt, we conclude that Seibert was discharged upon his release from confinement in May 2001. See *Ailara v. State*, 311 Ga. App. 862, 864 (717 SE2d 498) (2011) (noting that because the trial court never revoked defendant's first offender status, or entered an adjudication of guilt, the defendant was entitled to discharge under the First Offender Act "upon fulfilment of [his] probationary period").

Further, even assuming that the trial court was correct that mandamus relief was not an available remedy in this case, and that the clerk had no authority to "back-date the Discharge Order," the trial court should have construed Seibert's request as a motion to correct the "order of discharge." This is because the effect of the trial court's judgment in this case was that the clerk's records did not evidence Seibert's "pre-existing automatic discharge." On the contrary, the clerk's records explicitly and incorrectly represented that Seibert was discharged in December 2014, reflecting when the trial court's order was dated and filed.

It is well settled that "there is no magic in mere nomenclature, and pleadings are construed to serve the best interests of the pleader, and are judged by function rather than name." *Davis v. State*, 330 Ga. App. 711, 712 (769 SE2d 133) (2015). See OCGA § 9-11-8 (f) ("All pleadings shall be so construed as to do substantial justice."); *Butts v. State*, 149 Ga. App. 492, 493 (3) (254 SE2d 719) (1979) (recognizing that the trial court has "authority at any time to correct an error on its records" and that it is the "court's duty to correct its own records to make them speak the truth"). See *Collins v. State*, 338 Ga. App. 886, 888-889 (1) (792 SE2d 134) (2016) (construing a defendant's "motion for discharge and exoneration" as a motion to correct a void sentence where the defendant challenged trial court's order finding his performance of his first-offender sentence unsatisfactory and denying him a first-offender discharge).

Thus, presuming mandamus relief was not available, Seibert was nevertheless entitled to have the trial court's order reflect that he was discharged as of the date on which he successfully completed his sentence, so that the clerk's records, in turn, would accurately reflect his discharge.[1] See *Ailara*, supra, 311 Ga. App. at 864 (determining that although the defendant's discharge was automatic, the trial court's

---

[1] Our conclusion renders moot Seibert's thirteenth claim of error.

13

erroneous order "sp[oke] for itself" and the defendant would benefit from the reversal of the order).

4. Next, Seibert challenges the trial court's dismissal of his amended complaint on the basis that the statute of limitations period had expired as to his tort claims. The trial court did not err in this regard.

"When a question of law is at issue, such as whether the statute of limitation bars an action, we owe no deference to the trial court's ruling and apply the plain legal error standard of review." (Citation omitted.) *Harpe v. Hall*, 266 Ga. App. 340 (596 SE2d 666) (2004). "The general rule for determining when a cause of action accrues and the statute of limitation begins to run is well-settled in Georgia: The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained his or her action to a successful result." (Citation omitted.) *Demere Marsh Assoc., LLC v. Boatright Roofing & Gen. Contracting, Inc.*, 343 Ga. App. 235, 238-239 (1) (808 SE2d 1) (2017). Under OCGA § 9-3-33, "actions for injuries to the person shall be brought within two years after the right of action accrues, except for injuries to the reputation, which shall be brought within one year after the right of action accrues."

After requesting permission in October 2017, Seibert filed an amended complaint in January 2018, alleging "negligent performance" on the clerk's part and demanding "compensatory and punitive damages" stemming from the failure to report his first offender discharge. More than two years prior, however, on February 26, 2015, the clerk had already updated the notice of the discharge order to the GCIC. This was the latest time at which Seibert's purported tort action accrued because he had long since been automatically discharged and could have maintained an action to a successful result. Therefore, by the time Seibert raised his tort claims, the applicable two-year limitation period had lapsed.

We are unpersuaded by Seibert's argument that because the clerk has not yet "properly" performed his ministerial duty, the continuing tort doctrine applies so as to toll the statute of limitations. Even if this doctrine applied, the Supreme Court of Georgia has made clear that "in a continuing tort a cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof." (Citation omitted.) *Waters v. Rosenbloom*, 268 Ga. 482, 483 (2) (490 SE2d 73) (1997) (action was barred by the five-year statute of repose because the plaintiff knew or through reasonable diligence should have discovered the injury and the cause of such injury before the five years preceding the filing of the

15

action). See *King v. Seitzingers, Inc.*, 160 Ga. App. 318 (287 SE2d 252) (1981) (in a continuing tort a cause of action accrues "so as to cause the statute of limitation to run" when a plaintiff discovers or with reasonable diligence should have discovered that he was injured). As early as April 2015, Seibert was complaining in filings in the trial court that the clerk had recorded and reported to the GCIC an incorrect discharge date, allegedly causing him harm. Seibert's reliance on *Hicks v. McGee*, 283 Ga. App. 678 (642 SE2d 379) (2007) is unavailing because it is not apparent from that case that the plaintiff knew (or should have known) before the expiration of the statute of limitations that the clerk had failed to notify the Department of Corrections of his sentence. Accordingly, by the time Seibert filed his purported tort claim in 2018, the two-year limitations period had expired and the claim was time-barred.

5. We now address the trial court's determination that the clerk properly discharged his duties regarding the recording and reporting of Seibert's 2011 criminal case. Again, the trial court did not err.

The record contains an apparent printout from a Georgia Department of Corrections website, dated September 5, 2014, which Seibert claims shows that he was still sentenced on the aggravated stalking convictions that this Court reversed in 2013. Seibert's position is that this document illustrates that the clerk failed to timely

16

notify the Commissioner of the Georgia Department of Corrections of the reversal. See OCGA § 42-5-50 (a) ("The clerk of the court shall notify the commissioner of a sentence within 30 working days following the receipt of the sentence and send other documents set forth in this Code section."). However, this document does not evince that the clerk failed to report that the 2011 convictions had been reversed. The director of the records and reporting division with the clerk's office averred that the clerk, within 30 working days of our decision in *Seibert*, notified GCIC of this Court's reversal. Given the absence of evidence to the contrary, this enumeration fails.

6. Lastly, in his twelfth and fourteenth enumerations of error, Seibert raises a litany of issues that were not ruled on by the trial court and are therefore not properly before us. *Sherman v. Dev. Auth. of Fulton County*, 320 Ga. App. 689, 695 (4) (740 SE2d 663) (2013) ("The law in Georgia is that because the appellate courts are for correction of errors of law, issues which have not been *ruled on* by the trial court may not be raised on appeal.") (citation and punctuation omitted); *Georgia Dept. of Natural Resources v. Coweta County*, 261 Ga. 484, 485 (405 SE2d 470) (1991) (same). Thus, these claims provide nothing for us to review.

17

In sum, although it erred in concluding that the clerk was not served, the trial court properly determined that the clerk's office was not subject to suit, that Seibert's tort claims were time barred, and that the clerk properly discharged his duties regarding the recording and reporting of the conviction and sentence in Seibert's 2011 criminal case. The trial court's order denying Seibert's March 2017 petition is reversed in part, and this case is remanded for the entry of an order reflecting that Seibert was discharged as of the date that he completed his first-offender sentence, so the clerk can, in turn, fulfill his recording and reporting duties under statute. See *Collins*, supra, 338 Ga. App. at 891 (3) (reversing the trial court's order denying the defendant's motion and remanding for entry of an order of exoneration and discharge consistent with the First Offender Act).

*Judgment affirmed in part and reversed in part. Rickman and Reese, JJ., concur.*