**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).

**April 30, 2020**

# In the Court of Appeals of Georgia

A20A0460. MAYNARD v. THE STATE.

MCFADDEN, Chief Judge.

In January 2019, Surge Eugene Maynard sent a series of threatening emails to the attorney who represented the mother of his child in a child support dispute. He then went to the attorney's house, entered an attached garage, and cursed at the attorney through an internal door as the attorney's family hid and the attorney called 911. For these acts, a jury found Maynard guilty of the misdemeanor offenses of making harassing communications (OCGA § 16-11-39.1 (a)), stalking (OCGA § 16-5-90 (a)), and criminal trespass (OCGA § 16-7-21 (b)). On appeal, Maynard challenges the sufficiency of the evidence, but the trial evidence authorized his convictions for these offenses. He challenges certain evidentiary rulings, but the trial court did not abuse her discretion in those rulings. And he challenges a jury charge

that the trial court gave in response to a question from the jury, but the trial court did not abuse her discretion in giving that charge. So we affirm.

1. *Sufficiency of the evidence.*

There is no merit in Maynard's claim that there was insufficient evidence to support his convictions. In considering this claim,

> we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Rowland v. State*, 349 Ga. App. 650 (1) (825 SE2d 231) (2019) (citation omitted).

So viewed, the trial evidence showed that attorney Jon Mills represented the mother of Maynard's child in a child support dispute. In early January 2019, Maynard sent Mills a series of emails that Mills construed as threatening to himself and his family. Contained in or attached to the emails, among other things, were pictures of Mills's wife and children that Maynard apparently obtained online; allegations that Mills was under the influence of an evil spirit; vehement demands that Mills and his family move away from the area; suggestions that, if Mills did not keep away from

2

Maynard, Mills might "tempt the fate of his existence"; and the following statement: "Remember Jon, you've been suggested to leave and I don't see a for sale sign out side of your house yet. I've included your newly discovered email so you'll get the message. I'll mail it to you or personally post it on your door if I must but **you're leaving**. Goodbye Jon." (Emphasis in original.)

Mills told Maynard not to send him emails, that he viewed them to be harassing, and that if Maynard did not stop Mills would seek a temporary protective order against him. Mills also told Maynard that any further contact should only concern legal matters and should only be made through the United States mail. But Maynard did not stop sending Mills emails, and in later emails Maynard acknowledged that Mills found the emails harassing, making statements such as "Due to expressed concerns of harassment and some being off the clock, the Court adjourned for the weekend and is now hereby Continued"; and "Continuation of last week's correspondence on harassment."

On January 22, 2019, Mills obtained an ex parte temporary restraining order against Maynard. He also had Maynard served with a contempt petition in the ongoing child support dispute.

On the evening of January 27, 2019, Maynard went to Mills's house in Oconee County, entered the attached garage, and knocked repeatedly on the door connecting the garage to the house. Maynard spoke through the door, telling Mills not to be scared, saying he had something for Mills, accusing Mills of taking something away from him, and calling Mills a "motherfucker" and a "coward." Given their previous interactions, Mills thought Maynard was there for "revenge" in connection with the child support case and he was scared for himself and his family. He told his family to hide, retrieved a personal handgun, called 911, and stepped outside to see what was happening and to try to diffuse the situation. Maynard left the garage, put the contempt papers that had been served on him on the windshield of Mills's vehicle, and made a few more comments to Mills before pulling out of the driveway, squealing his vehicle's tires in the process. The next day Maynard emailed to Mills a video-recording Maynard made of this encounter.

This evidence authorized the jury to find that Maynard had committed the crime of making harassing communications, which occurs, among other ways, when a person "[c]ontacts another person repeatedly via . . . email . . . for the purpose of harassing, molesting, threatening, or intimidating such person or the family of such person[.]" OCGA § 16-11-39.1 (a) (1). Maynard repeatedly emailed Mills, despite

4

Mills's insistence that he stop and despite acknowledging that Mills found the emails harassing. And in those emails, Maynard made comments or attached photographs or documents that implied he might harm Mills or his family. This evidence was sufficient to sustain his conviction under OCGA § 16-11-39.1 (a) (1). See *Kilby v. State*, 289 Ga. App. 457, 459 (1) (657 SE2d 567) (2008). Contrary to Maynard's argument, the fact that the emails were not sent on the specific date set out in the state's accusation for this offense (January 27, 2019) does not change this result, because the accusation did not allege that the date was material. See *State v. Layman*, 279 Ga. 340, 341 (613 SE2d 639) (2005) ("the [s]tate is not restricted at trial to proving that an offense occurred on the date alleged in the indictment when the indictment does not specifically allege that the date of the offense is material").

This evidence also authorized the jury to find that Maynard had committed the crime of stalking, which occurs, among other ways, when a person

> contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person. . . . [T]he term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her

immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

OCGA § 16-5-90 (a) (1). (The state did not charge Maynard with the offense of aggravated stalking by contacting Mills in violation of the terms of the temporary protective order. See OCGA § 16-5-91 (a). )

The series of emails that preceded Maynard's January 27, 2019 appearance at Mills's house established the required pattern of behavior. See *Austin v. State*, 335 Ga. App. 521, 524 (1) (782 SE2d 308) (2016) (pattern of behavior "may include the prior history between the parties"). And although Maynard challenges the sufficiency of the evidence showing that he had the necessary intent to be found guilty of stalking, given the evidence of his "persistent, disturbing actions, and his refusal to leave [Mills] alone, a rational jury could have found beyond a reasonable doubt that [his] acts were intended to harass and intimidate and placed [Mills] in fear for [his and his family's] safety." *Hennessey v. State*, 282 Ga. App. 857, 860 (640 SE2d 362) (2006).

Finally, this evidence authorized the jury to find Maynard had committed the offense of criminal trespass, which occurs, among other ways, when a person "knowingly and without authority . . . [e]nters upon the land or premises of another

6

person . . . for an unlawful purpose[.]" OCGA § 16-7-21 (b) (1). Maynard argues that there was no evidence that he went onto Mills's property and into his garage for an unlawful purpose, but, as discussed above, the evidence authorized the jury to find that he went there to stalk Mills in violation of OCGA § 16-5-90 (a) (1).

Maynard also argues that the state failed to prove venue or to identify him at trial. These claims are meritless. Mills identified Maynard at trial, and the jury could find from Mills's testimony that his house was located in Oconee County, where the case was prosecuted.

2. *Evidentiary rulings*.

Maynard argues that the trial court erred in allowing the state to present certain evidence in violation of OCGA § 24-4-403, which permits a trial court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." But "[d]ecisions regarding relevance are committed to the sound discretion of the trial court, and the exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used only sparingly." *Venturino v. State*, 306 Ga. 391, 395 (2)

(b) (830 SE2d 110) (2019) (citations and punctuation omitted). Maynard has not shown that the trial court abused her discretion in declining to use that remedy.

Maynard argues that the trial court erred in allowing the state to present testimony that when Mills obtained the temporary protective order for himself, he also obtained a temporary protective order for his client, the mother of Maynard's child. The trial court permitted this testimony "to provide context for previous interactions between [Mills] and [Maynard] and to explain the dynamic between them." The testimony on this point was very brief, amounting to no more than a mere mention in passing, the order itself was not admitted as an exhibit, and Maynard offers no persuasive argument in his appellate brief for why the trial court's decision not to exclude the testimony under Rule 403 was an abuse of discretion.

Maynard also argues that the trial court erred in admitting as exhibits copies of the series of emails that he sent to Mills in January 2019. He summarily argues that these exhibits were duplicative and repetitive, included messages written by third parties, and contained information that the trial court had excluded in an earlier ruling on a motion in limine. Maynard does not explain how any ruling on a motion in limine was violated by the contents of the emails, and the nature of this alleged violation is not apparent from the record. Our review of these exhibits reveals nothing

8

that would have required the trial court to use the extraordinary remedy of Rule 403 to exclude what is clearly highly relevant evidence.

3. *Jury charge*.

Maynard argues that the trial court erred in a charge she gave in answer to a question from the jury during deliberations. The jury asked the trial court whether "the harassing communication charge appl[ied] only to the date of Jan[uary] 27," the date alleged in the accusation. Maynard's counsel initially argued against a proposed charge in response to this question and the trial court modified the proposed charge in a way that addressed some but not all of counsel's points, ultimately instructing the jury as follows:

> I charge you that the dates alleged in this accusation are not material elements of the charges contained therein. And where the date alleged in the accusation is not a material element of the offense, the state must prove that the offense occurred as [of] any date within the statute of limitations. I further charge you that the statute of limitations, with respect to all counts in this accusation, is two years.

Counsel made no further objection.

Assuming arguendo that Maynard sufficiently objected to the charge, we find no abuse of discretion. See *Barnes v. State*, 305 Ga. 18, 23 (3) (823 SE2d 302) (2019)

9

(generally "the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court") (citations and punctuation omitted). The charge given by the trial court in response to the jury's question was a "correct statement[ ] of the law and, as a whole, would not mislead a jury of ordinary intelligence." *Camacho v. State*, 342 Ga. App. 637, 641 (1) (a) (804 SE2d 660) (2017) (citation and punctuation omitted). See OCGA § 17-3-1 (e) ("Prosecution for misdemeanors shall be commenced within two years after the commission of the crime."); *Ledesma v. State*, 251 Ga. 885, 886 (1) (a) (311 SE2d 427) (1984) (where indictment does not allege that dates of offense were material, state must show offense occurred during statutory period of limitations). This charge was not, as Maynard contends, a comment by the trial court on Maynard's guilt in violation of OCGA § 17-8-57.

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur*.